UNITED STATES of America, Appellee,

v.

Verne Allen LYON, Appellant.

Nos. 77–1348 and 77–1489.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1977.

Decided Dec. 9, 1977.

Leonard J. Frankel, Wolff, Frankel, McConnell & Passanante, Clayton, Mo. (argued), and Richard S. McConnell, Jr., Clayton, Mo., on brief, for appellant.

Frederick R. Buckles, Asst. U. S. Atty., St. Louis, Mo. (argued), and Barry A. Short (former U. S. Atty.), St. Louis, Mo., on brief, for appellee.

Before STEPHENSON and WEBSTER, Circuit Judges, and MARKEY,* Chief Judge.

MARKEY, Chief Judge..

Lyon appeals from two convictions. In No. 77–1348, a jury found him guilty of "willfully placing * * * a dynamite bomb * * * in and upon the terminal and depot of the St. Louis Municipal Airport, * * * with intent to * * * make such terminal and depot unusable" in violation of 18 U.S.C. § 32.[1] In No. 77–1489, his conviction was for "having been previously arrested * * * and admitted to bail * * * willfully did fail to appear as required" in violation of 18 U.S.C. 3150.[2] We reverse the conviction and remand for new trial in 77–1348. We affirm the conviction in 77–1489.

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. 18 U.S.C. § 32, in pertinent part, provides: Whoever * * * willfully * * * places or causes to be placed any destructive substance in, upon, or in proximity to any * * * terminal * * * shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

2. 18 U.S.C. § 3150, in pertinent part, provides:

Whoever, having been released pursuant to this chapter * * * willfully fails to appear before any court or judicial officer as required, shall, subject to the provisions of the Federal Rules of Criminal Procedure, incur a forfeiture of any security which was given or pledged for his release, and, in addition, shall, * * * be fined not more than $5,000 or imprisoned not more than five years, or both, * * *.

## The Facts

At approximately 7:30 p. m., December 17, 1966, a dynamite bomb exploded in the St. Louis Municipal Airport terminal, damaging the terminal but injuring no one.

The unexploded bomb was discovered and reported to an airport security officer, who evacuated the terminal and notified St. Louis County Police and Fire Departments. A group of county police officers, led by Major F. J. Vasel, responded. Major Vasel inspected the bomb, comprised of a wind-up alarm clock, two sticks of dynamite, caps and wires, all arranged in a shoe box. As Vasel turned and walked away, the bomb exploded, knocking him to the floor.

In the late evening of December 9th, a St. Louis police officer told Vasel that one Fridley might have some information. Vasel and Detective Mulitsch interviewed Fridley that evening and learned that Fridley and other employees of McDonnell Aircraft Corporation were suspicious of a co-worker. Fridley gave Vasel the names of the other suspecting employees, one of whom was Bryon Rall. Vasel went directly to Rall's home, where Rall said that, prior to the bombing, he had overheard a telephone conversation of his fellow-employee Lyon in which a reference to purchase of dynamite was made.

Vasel and Mulitsch then interviewed Emil Eisenreich, also an employee of McDonnell, who told them that on Saturday, December 17th, the day of the bombing, Lyon had asked him if he knew anyone who could solder some wires to two flashlight batteries. Eisenreich directed Lyon to a maintenance man and later observed Lyon with the batteries and wires soldered.

Vasel and Mulitsch next went to the apartment of Martha Fay Van Diver. She said that she and Lyon regularly rode to work together and that on Thursday or Friday prior to the bombing Lyon had asked her for a shoe box. On Sunday, December 18th, the day following the bombing, Lyon came to Miss Van Diver's apartment to wrap Christmas presents and when asked whether he still needed a shoe box, Lyon replied that he did not; that he had gotten a shoe box from his landlady.

At 9:00 a. m. on December 20th, Vasel and Mulitsch went to Lyon's address and met Lyon's landlady, Mollie Lorts, who showed them the second floor room she rented to Lyon. Other officers, including a Detective Crews, joined Vasel and Mulitsch at the rooming house. Mrs. Lorts confirmed that she had given Lyon a shoe box and gave the officers an identical box. The officers proceeded to Lyon's room and looked in. There was no door—only a curtain hanging in the doorway. The officers observed, through the doorway, a bundle of multi-colored wire on a dresser. Vasel directed Mulitsch and Crews to go to the St. Louis Courthouse and obtain a search warrant.

Upon affidavit and application of Crews, a search warrant was issued. Crews and Mulitsch then met Vasel and F.B.I. Agent Clark Smith at McDonnell's plant where Lyon was arrested. Lyon was given *Miranda* warnings and, together with the officers, returned to his rooming house, where the search warrant was executed.

Lyon advised the officers that there was dynamite in a suitcase and blasting caps in a dresser drawer. The officers found a small cardboard box containing seven sticks of dynamite in the suitcase and a box containing four blasting caps in the dresser. The dynamite, the caps, the wire earlier observed, the suitcase, two newspapers, and a receipt from a hardware store in Troy, Missouri, showing a sale of ten sticks of dynamite and five blasting caps, were seized.

Lyon was indicted by a federal grand jury for violation of 18 U.S.C. § 32 and trial was set for October 16, 1967. Lyon having failed to appear, bond was forfeited and a bench warrant issued.

Testimony indicated that Lyon was deported from Peru on February 3, 1977. In any event, he was on that day placed aboard an airliner, alongside a Deputy U.S. Marshal. When the plane arrived in Miami, the bench warrant was executed by the Marshal. On March 31, 1977, a federal

grand jury returned an indictment against Lyon charging him with failure to appear for the October 16, 1967, trial.

Trial on the bombing charge commenced on April 11, 1977, and resulted in a jury verdict of guilty two days later. On April 28, 1977, Lyon was sentenced to fifteen years imprisonment. The bail jumping case was submitted to the trial court on stipulated facts, resulting in a finding of guilty on May 31, 1977. On June 10, 1977, Lyon was sentenced to two years imprisonment, to run consecutively with the fifteen year sentence.

### Issues

 The dispositive issue is whether the trial court erred in failing to suppress evidence seized under the search warrant.[3]

### OPINION

(1) *The Search Warrant*

Lyon argues that the items seized under the search warrant should have been suppressed because the application for and affidavit supporting the warrant (a) contained reckless or intentional misstatement of material facts and (b) failed to show probable cause, even if the misstatements were innocent. The affidavit, in its entirety, reads:

*AFFIDAVIT*

Detective Sergeant Robert A. Crews, a member of the St. Louis County Police Department, of lawful age, being first duly sworn, deposes and says that he is a member of the St. Louis County Police Department. That he has received information that property, to-wit:

one (1) bundle of multi-colored wire.

one (1) bundle of dynamite and dynamite caps.

Various timing devices.

are being kept and secreted at premises described as:

a two story frame structure residence located at 2248 Wengler, St. Louis County, Missouri, occupied by Mollie Bertha Lorts with a room rented to Vernon Lyon;

Affiant states that he gained this information from Emil Arno Eisenreich and Byron Rall, and from personal observation.

Further affiant saith not.

Det. Sgt. Robert A. Crews /s/

Detective Sergeant Robert A. Crews

Sworn to and subscribed before me this 20th day of December, 1966.

Douglas L. C. Jones /s/

Douglas L. C. Jones

Crews' application merely said he believed the same items were at Lyon's apartment, referring to the affidavit as setting forth the basis for that belief.

(a) *Reckless or Intentional Misstatements*

The application and affidavit contained a number of misstatements. A reader of those papers would not know that the only item personally observed by Crews was the wire on Lyon's dresser. Nor that it was Vasel and Mulitsch, not Crews, who gained

---

**3.** Thus we do not reach the issues involving a "failure to appear" instruction, the production of a Central Intelligence Agency file, and certain evidentiary rules, though we comment on the latter two.

Lyon's additional arguments have been considered and found totally lacking in merit:

(a) Refusal, per 18 U.S.C. § 3290, to apply the statute of limitations, 18 U.S.C. § 3282, denies due process to bail jumpers.

(b) Delay between his February 2, 1977, arrest and his March 31, 1977, arraignment on the bail jumping charge violated 18 U.S.C. § 3161 (Speedy Trial Act). The arrest, however, was on the bombing charge, not bail jumping.

(c) Because the items seized were not illegal per se, they were only evidentiary and not subject to seizure in 1966, i. e., before *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Though we do not reach that issue, the present search was not a general exploratory search condemned by *Gouled v. United States*, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921) but was a search conducted for specific instrumentalities, some of which had been used in the commission of a crime. *Harris v. United States*, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). *See also, Golliher v. United States*, 362 F.2d 594 (8th Cir. 1966).

information from Eisenreich and Rall. Mulitsch accompanied Crews when the warrant was obtained, but there was no evidence that the issuer of the warrant was made aware of the presence or role of Mulitsch. Nor would the reader learn from those papers that neither Eisenreich nor Rall had said a word about a storage of dynamite, caps, or timing devices in Lyon's apartment.

This court has adopted standards concerning misrepresentations of fact by those seeking a search warrant. *United States v. Marihart,* 492 F.2d 897, 899–900 (8th Cir. 1974), *cert. denied* 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974):

> * * * Evidence should not be suppressed unless the trial court finds that the government agent was either recklessly or intentionally untruthful. * * * Even where the officer is reckless, if the misrepresentation is immaterial, it did not affect the issuance of the warrant and there is no justification for suppressing the evidence. * * * However, we conclude that if deliberate government perjury should ever be shown, the court need not inquire as to the materiality of the perjury. The fullest deterrent sanctions of the exclusionary rule should be applied to such serious and deliberate government wrongdoing.

The rule we announce today is intended only to test credibility of government agents whose affidavits or testimony are before the magistrate.

█ There is no evidence establishing that Crews was either "recklessly or intentionally untruthful." The search warrant application and affidavit could certainly have been more complete and explicit, but we do not view such documents as entries in an essay contest, *Spinelli v. United States,* 393 U.S. 410, 438, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), nor may we disregard their preparation "in the midst and haste of a criminal investigation." *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

█ Crews' statements are ambiguous, in failing to differentiate between the item he had personally observed (multi-colored wire) and items which he had not (dynamite, caps, and timing devices), and in implying, without saying, that he had personally interviewed Eisenreich and Rall. But ambiguity does not in every case constitute recklessness or intent to deceive; and it does not here. Crews' failure to be specific does not here equate to a reckless or intentional making of sworn statements without regard to their truth or falsity.

### (b) *Probable Cause*

█ In determining whether there was probable cause, "[i]t is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention." [Emphasis in original.] *Aguilar v. Texas,* 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 1511, 12 L.Ed.2d 723 (1964).

*Aguilar* required demonstration of a basis for believing hearsay information from an unnamed informant. *United States v. Ventresca,* supra, established the requirement that an affidavit state "some of the underlying circumstances" supporting affiant's conclusions where informants were named. *United States v. Giacalone,* 541 F.2d 508 (6th Cir. 1976).

The only "underlying circumstance" set forth here is that Crews gained information from personal observation and interviews. Nothing whatsoever was "brought to the magistrate's attention" respecting the identity of Eisenreich and Rall, whether they were credible, or just what information had been obtained from them.

The government argues:

> Had the officers in this case ceased their investigation upon receiving the information from the individuals whom they interviewed, they may have had no more than a suspicion that the instruments of a crime might be in the room rented by Mr. Lyon. However, the officers went beyond the interviews. They viewed the room rented by Mr. Lyon and confirmed what might have been their suspicions by seeing inside the room the wires lying on

top of the dresser. This personal observation, coupled with the interviews of the people, was sufficient to establish probable cause. The fact that the information was based on interviews with the two individuals named, plus the personal observation of the officer, was sufficient information for Judge Jones to conclude that there was probable cause to believe that the named items were on the premises.

The flaw in the government's argument lies in the absence from the application or affidavit of the information supplied in the "interviews of the people." Nothing of record indicates that Judge Jones was made aware of that information. Worse, as presented to Judge Jones, the affidavit gives an impression that all of the named items, the wire, dynamite, caps, and timing devices were observed by the affiant. Moreover, the face of the affidavit raises a false inference, i. e., that Rall and Eisenreich had said the named items were secreted in Lyon's apartment and personal observation confirmed that fact. In short, the application and affidavit contain only the conclusion of Crews that probable cause for issuance of a search warrant existed, coupled with unclear and misleading statements of a basis for that conclusion.

Failure to set forth sufficient "underlying circumstances" renders the search warrant fatally defective. If probable cause existed, the circumstances giving rise thereto were not detailed to the issuing judge.

■ The seized evidence being clearly prejudicial to Lyon and the information brought to Judge Jones' attention being insufficient to establish probable cause, we must remand for a new trial.

### Other Issues

Because they may arise at retrial, we have considered:

4. If at retrial production of the C.I.A. file is sought and resisted on the ground of a national security privilege, a claim to the privilege should be asserted by the head of the agency. *United States v. Reynolds, supra.*

*The C.I.A. Records.*

■ The trial court's conduct of an *in camera* proceeding, at which two C.I.A. representatives testified under oath, with counsel for defense and prosecution present, was the proper manner of evaluating the merits of Lyon's subpoena duces tecum. Having reviewed the sealed transcript of that proceeding, we find no error in the trial court's decision to quash the subpoena. The trial court need not have personally read the file. *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). The file was not initiated until after the bombing incident, and Lyon was never affiliated with the C.I.A. The file did not supply evidence of guilt or innocence of the bombing offense charged. *United States v. Agurs,* 427 U.S. 97, 112–13, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The absence of Lyon from the *in camera* proceeding did not violate his Fifth Amendment right to due process or his Sixth Amendment right to confrontation. Fed.R.Crim.P. 43, requiring a defendant's presence "at every stage," must be read in conjunction with Rule 52(a), providing that harmless error will be disregarded. *Peterson v. United States,* 411 F.2d 1074 (8th Cir. 1969), *cert. denied* 396 U.S. 920, 90 S.Ct. 247, 24 L.Ed.2d 199 (1969). Nothing occurring at the *in camera* proceeding was used against Lyon. Our review of the transcript convinces us that Lyon's presence could not have contributed to defense counsel's examination of the witnesses. Hence there was no prejudice in his exclusion.[4]

### Evidentiary Rulings.

■ There was no error in denial of Lyon's motion to strike Mrs. Lort's testimony and leaving it to jury evaluation. Her lack of independent recollection did not violate Fed.R.Evid. 602.[5] That Rule excludes

5. Rule 602. Lack of Personal Knowledge
 A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. * *.

testimony concerning matter the witness did not observe or had no opportunity to observe. *See* McCormick on Evidence, § 10 (2d ed. 1972). Mrs. Lorts' competency, Fed. R.Evid. 601,[6] is a matter for the court. Fed.R.Evid. 104(a).[7] Her testimony was relevant. Its probative value was not outweighed by danger of undue prejudice, confusion, or misleading of the jury. Fed.R. Evid. 403.

■ No error occurred in permitting Special F.B.I. Agent Smith to read a portion of his transcribed interview of Mrs. Lorts.[8] The trial court apparently relied on Fed.R.Evid. 804(a)(3) and (b)(5).[9] There is no record indication that the government could have obtained the "shoe box" evidence from another source. Trustworthiness was guaranteed by Smith's detailed testimony about how he took Mrs. Lorts' statement and transcribed it. The shoe box bore the identified signatures of Lorts and Smith[10] and conformed to the description originally given by Mrs. Lorts. The government was not aware of Mrs. Lorts' poor memory prior to trial and Lyon had copies of her statement. Under the circumstances, strict compliance with the notice provision of the Rule is not required. *United States v. Carlson,* 547 F.2d 1346, 1355 (8th Cir. 1976), *cert. denied* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977).

### Summary

We reverse Lyon's conviction under 18 U.S.C. § 32 and remand for new trial because of admission of evidence seized under an improperly issued search warrant. No error occurred in quashing the subpoena for C.I.A. records or in admission of testimony.

We affirm Lyon's conviction under 18 U.S.C. § 3150.

MODIFIED

**6.** Rule 601. General Rule of Competency
Every person is competent to be a witness except as otherwise provided in these rules. * * *.

**7.** Rule 104. Preliminary Questions
(a) Questions of admissibility generally.— Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

**8.** "Mrs. Mollie Bertha Lorts, 2248 Wengler Avenue, Overland, Missouri, advised Verne Lyon has been a tenant, occupying an upstairs front room, for about the past eight months. She stated Lyon's home address is 611 Thirteenth Street, Boone, Iowa, and he is employed at the McDonnell Aircraft Company in St. Louis County.

"Mrs. Lorts informed that, to her knowledge, Verne Lyon has not received the delivery of any kind of a box at her rooming house within the recent past.

"She stated Lyon asked her for a shoe box on Wednesday, December 14, 1966, and that she put it in his room on that day. Mrs. Lorts stated the shoe box she furnished Lyon was a Brown Shoe Company shoe box, gray in color, bearing the brand name 'Pedwin' on one end. She further advised that this box was broken at one end and had a piece of scotch tape on it to hold it together.
"Mrs. Lorts then furnished a Brown Shoe Company shoe box, gray in color, bearing the brand name 'Pedwin' on one end, which she stated was exactly the same kind she gave Verne Lyon on December 14, 1966."

**9.** Fed.R.Evid. 804(a)(3) provides:
"Unavailability as a witness" includes situations in which the declarant—
* * * * * *
(3) testifies to a lack of memory of the subject matter of his statement * * *.
Paragraph (b)(5) of Rule 804 provides:
The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
* * * * * *
(5) Other exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. * * *.

**10.** The jury apparently drew the legitimate inference, from the testimony, that the two signatures were affixed to the shoe box in 1966.