Michael KEMP, Appellant/Cross–
Appellee,

v.

C.O. I Antonio BALBOA, Appellee/Cross–
Appellant.

Nos. 92–2038, 92–3451.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1993.

Decided May 5, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied June 9, 1994 in
No. 92–2038.

James E. Mello, St. Louis, MO, argued, for appellant.

Andrea K. Spillars, Asst. Atty. Gen., Jefferson City, MO, argued, for appellee.

Before HANSEN, Circuit Judge, and JOHN R. GIBSON * and FRIEDMAN **, Senior Circuit Judges.

FRIEDMAN, Senior Circuit Judge.

In this case, a state prisoner filed suit under 42 U.S.C. § 1983 (1988), accusing a prison guard of improperly confiscating his medication used to control his epilepsy, resulting in the prisoner's having epileptic fits, which injured him. The jury found for the prisoner, but awarded him only nominal damages of $1.00 and punitive damages of the same amount. The prisoner challenges the award of only nominal damages as based upon inadmissible evidence, and the guard appeals from the award of attorney fees against him. We hold that the district court improperly admitted testimony by a lay witness who lacked personal knowledge of the matter about which she testified, in violation of Fed.R.Evid. 602, and remand for a new trial on the issue of damages only. We vacate the attorney fee award.

I

A. There was evidence supporting the verdict from which the jury could have found as follows:

From January 1987 to January 1990, the appellant Kemp was a prisoner in the Central Missouri Correctional Center (Center).

---

* The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted, and took senior status on January 1, 1994, before the opinion was filed.

** DANIEL M. FRIEDMAN, Senior Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

The appellant Balboa was a correctional "utility" officer there during this time. Kemp had suffered from grand mal epilepsy since childhood. The Missouri Department of Corrections had diagnosed this condition prior to Kemp's incarceration at the Center, and the Center's medical staff knew that Kemp suffered from seizures. The Center gave Kemp a prescription of medication to control his grand mal epilepsy seizures, and the Center's medical staff dispensed Kemp's prescription medicine on a weekly basis. Kemp was permitted to keep this medication in his cell. Balboa repeatedly confiscated Kemp's epilepsy medication, and flushed it down the toilet. Balboa ignored the pleas of Kemp and a fellow inmate to return the medication.

Kemp's epileptic seizures increased in frequency, allegedly due to Balboa's confiscation of Kemp's medication. During his seizures, Kemp involuntarily bit and attempted to swallow his tongue, beat his head on the concrete floor and bled from the mouth.

B. Kemp filed the present § 1983 suit in the United States District Court for the Western District of Missouri. The third claim in that complaint—and the only one before us as a result of the jury verdict and the scope of the appeal—alleged that Balboa had deprived Kemp of his Eighth Amendment right against cruel and unusual punishment by deliberate indifference to Kemp's serious medical needs, through confiscating medication Kemp used to control his epileptic seizures. The jury found for Kemp on this claim, but awarded him no actual damages, one dollar in nominal damages, and one dollar in punitive damages.

C. Vicki Maness, a licensed practical nurse at the Center, testified that Kemp failed to pick up his medication from the prison infirmary on seven separate occasions. She testified that she had reviewed portions of Kemp's medical file relating to the dispensing of medication. Kemp objected to the introduction of the medical file into evidence on the ground of surprise, because Balboa had not given the file to Kemp pursuant to a pretrial order requiring the exchange of exhibits prior to trial. Balboa then told the district court that portions of the medical file would be used only to refresh Maness' recollection, and would not be offered "as evidence." Maness read from the records three dates during June and July, 1989 on which Kemp allegedly failed to pick up his epilepsy medication from the prison infirmary.

Kemp objected repeatedly to Maness' reading of these records while she was testifying on direct examination. After the court overruled these objections, Kemp asked the court to instruct the jury that Maness was testifying from the medical records rather than her own personal knowledge, but the court denied that request. Maness then testified that Kemp failed to procure his medication on three occasions in September 1989, and one time in October 1989.

On cross examination, Maness stated she was not on duty on the days that Kemp allegedly failed to obtain his medication, and that her only knowledge of the subject came from her reviewing the medical charts, which someone else had prepared. Upon completion of the cross examination, Kemp moved to strike Maness' testimony on the ground that Maness' had no personal knowledge of Kemp's failure to pick up his medication, since her testimony was based solely on her review of Kemp's medical file. The district court denied the motion to strike.

Kemp filed a timely motion for a new trial on damages, which the district court denied.

In his appeal, Kemp challenges solely the failure to award actual damages. He does not challenge the award of only one dollar in punitive damages.

D. Prior to trial, the defendants offered to settle Kemp's case for $150.00, which Kemp refused. Following the jury verdict, Kemp requested attorney fees and costs, pursuant to 42 U.S.C. § 1988. Balboa moved to strike the request on the ground that Kemp had rejected a settlement offer more favorable than the judgment he obtained. See Fed.R.Civ.P. 68; Marek v. Chesny, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). The district court denied the motion to strike and awarded Kemp attorneys fees and costs totalling $32,181.40. In his cross appeal, Balboa challenges this award.

## II

■ A. Unlike an expert witness, who may give his or her opinion about a matter within the witness' expertise (Fed.R.Evid. 703), a lay witness may testify only about matters within his or her personal knowledge. Fed.R.Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.") Rule 602 prohibits a lay witness from testifying about matters that are not within the personal knowledge of the witness. *See, e.g., United States v. Lyon,* 567 F.2d 777, 783–84 (8th Cir.1977), *cert. denied,* 435 U.S. 918, 98 S.Ct. 1476, 55 L.Ed.2d 510 (1978). Rule 602 "excludes testimony concerning matter the witness did not observe or had no opportunity to observe." *Id. See also* Fed. R.Evid. 602 advisory committee notes; and McCormick on Evidence, § 69 (4th ed.1992).

■ Maness was not tendered and did not testify as an expert witness. She testified only as a lay witness to present factual evidence that Kemp had failed to pick up his medication from the Center infirmary. As her testimony on cross examination brought out, however, she had no personal knowledge of these facts, since she was not on duty on the days on which she stated Kemp failed to pick up his medication. Her testimony was based not upon her personal knowledge of the facts about which she testified, but solely upon what she had read in the medical records prepared by others.

Those medical records themselves were not introduced in evidence. According to the district court and Balboa, however, the records were properly used to refresh Maness' recollection. Since Maness had no personal knowledge of the facts, however, she had no recollection that was capable of being refreshed.

When it developed on cross-examination that Maness had no personal knowledge that Kemp had failed to pick up his medication, it became apparent that Rule 602 barred that testimony and that it should not have been admitted. The district court, therefore, should have struck the testimony, as Kemp moved it to do. The court's failure to exclude that testimony was erroneous.

B. We cannot say that that error was harmless. The jury had found not only that Balboa confiscated Kemp's medication, but that, in the language of the court's instruction on punitive damages, Balboa's conduct "was recklessly and callously indifferent." The jury, however, awarded only nominal damages of $1.00. The court instructed the jury to do that if it found that Kemp "is entitled to a verdict upon his claim ... but found that plaintiff's damages have no monetary value."

The court also charged the jury that to prevail on his "claim for deliberate indifference to his serious medical need," Kemp had to prove not only that Balboa "with deliberate indifference confiscated plaintiff's lawfully possessed prescription medication," but also that "as a direct result, plaintiff was damaged."

Maness' testimony that Kemp had failed to pick up his medication might have lead the jury to conclude that it was Kemp's own indifference to his medical needs rather than Balboa's confiscation of his medication that was primarily the cause of Kemp's increased seizures. Indeed, based on Maness' testimony, the jury might have believed that Kemp, himself, sometimes failed to take his own medication. The probable impact of Maness' testimony on the jury is further suggested by the jury's request to see the medical files Maness read from during her testimony. The court denied the request, but instructed the jury to use its "collective recollection" of Maness' testimony regarding the contents of the medical logs.

Although the court instructed the jury to award Kemp "a nominal amount of one dollar" if it found Kemp's "damages have no monetary value," the instruction did not say that that was the only basis for awarding nominal damages. The jury might have determined that, in view of Balboa's serious misconduct, but its uncertainty about how responsible Balboa was for Kemp's injuries, an appropriate recognition of the justice of Kemp's cause was to award him only nominal damages. If the jury had not had Maness' incorrectly-admitted testimony before it, it

might have awarded actual, rather than only nominal, damages.

C. Balboa contends, however, that Kemp did not timely object to Maness' testimony. The objection that Maness did not have personal knowledge of the subject about which she testified could not have been made until that fact was brought out on cross-examination. As Balboa recognizes, after Maness completed her testimony, Kemp objected to the testimony for that reason and moved to strike it. Kemp also objected to Maness' reading from the medical records that she had not prepared and were not introduced into evidence. Kemp's objections to Maness' testimony were both timely and specific, and gave the court sufficient opportunity to correct the error of permitting Maness' testimony.

D. A new trial on damages alone is appropriate where liability is established and the only issue is the amount of damages. *Williams v. Armontrout,* 977 F.2d 437 (8th Cir.1992). Here, the jury found that Balboa is liable—a determination not challenged on appeal. The only issue infected by Maness' testimony is the amount of actual damages, and a new trial on that issue alone is appropriate.

### III

In the new trial on damages, the jury might award Kemp a greater amount than the $150.00 settlement the defendants offered before trial. If it does so, the issues Balboa raises on his cross-appeal relating to attorney fees would become moot. In the circumstances, we think the appropriate disposition of the cross-appeal is to vacate the award of attorney fees and costs and to remand the case for the district court to reconsider that issue in light of the decision in the new trial on damages.

The judgment of the district court is reversed insofar as it awarded Kemp nominal damages of $1.00, and the case is remanded to that court for a new trial on compensatory damages only. The judgment is vacated insofar as it awarded Kemp attorney fees and costs and the case is remanded for the dis-

trict court to reconsider that issue after and in light of the new trial on damages.