UNITED STATES of America, Appellee,

v.

Robert BUTTON, Appellant.

No. 80–1498.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1980.

Decided July 6, 1981.

---

Earl P. Gray, St. Paul, Minn. (argued), Mark W. Peterson, Minneapolis, Minn., for appellant.

Thomas K. Berg, U. S. Atty., Daniel W. Schermer (argued), Asst. U. S. Atty., District of Minnesota, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and PORTER, District Judge.*

DONALD J. PORTER, District Judge.

Defendant was charged in a one-count indictment with possession with intent to distribute phencyclidine (commonly known as "PCP" or "angel dust") in violation of 21 U.S.C. § 841(a)(1). The indictment was based upon items seized in a search of a single-family dwelling in Bloomington, Minnesota, under a search warrant issued by the state district court. The warrant was authorized by a state district judge, based upon the affidavit of a Minneapolis police officer. Before trial, defendant moved to suppress the evidence seized on the ground that the warrant was issued without probable cause. After a hearing before a United States magistrate, the magistrate filed a report and recommendation upholding the validity of the warrant and denying the motion to suppress the items seized. Thereafter, the United States District Court overruled defendant's exceptions to the

magistrate's report, and adopted the report and recommendation of the magistrate holding the warrant valid. The court denied the motion to suppress certain items later received in evidence at trial. After jury trial, defendant was convicted of the offense charged, and now brings this appeal. For the reasons stated in this opinion, we hold that the affidavit is insufficient to show probable cause and thus the warrant should not have been issued and all evidence seized under the warrant should have been suppressed.

## I. HEARSAY AS PROBABLE CAUSE

■ We are properly committed to accept some, but not all, hearsay to establish probable cause. *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The issue in this case is whether the unsworn declarations of the non-appearing, unnamed declarants, contained in the affidavit for a search warrant, meet Fourth Amendment [1] probable cause standards.

Basic to search warrant protections is the requirement of probable cause. Its function is to guarantee a substantial probability that the invasions involved in the search will be justified by discovery of offending items. Two conclusions necessary to the issuance of the warrant must be supported by substantial evidence: that the items sought are in fact seizable by virtue of being connected with criminal activity, and that the items will be found in the place to be searched.[2] The search warrant here was issued upon the information contained in the affidavit of a police officer. Most of the officer's affidavit was hearsay information since it came to him secondhand from two unnamed informants. Whether the information in the affidavit was sufficient to meet the

---

* The Honorable DONALD J. PORTER, United States District Judge for the District of South Dakota, sitting by designation.

1. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S.Const. Amend. IV.

2. Comment, 28 U.Chi.L.Rev. 664, 687 (1961) (emphasis omitted), *quoted with approval* in 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.1 at 441–42 (1978). *See also United States v. Mitchell*, 425 F.2d 1353, 1356 (8th Cir. 1970).

probable cause requirement of the Fourth Amendment must be determined under the test formulated by the Supreme Court in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964):

> Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, . . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the un-

derlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was "credible" or his information "reliable".

378 U.S. at 114–15, 84 S.Ct. at 1514 (citations and footnotes omitted).[3] *See also United States v. Holmes*, 594 F.2d 1167, 1170 (8th Cir. 1979); *Stanley v. State*, 19 Md.App. 507, 313 A.2d 847 (1974).[4]

The challenged affidavit is set forth verbatim in the margin.[5] The affidavit was

---

3. The principles of *Aguilar* were further explicated by the Supreme Court in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *Spinelli*, coining the phrase *"Aguilar's* two-pronged test", not only applied the "two-pronged test" to its own factual situation but also demonstrated how the search warrant application in *Aguilar* had failed to measure up against each of the prongs independently.

4. Justice Moylan, in *Stanley v. State, supra,* 313 A.2d at 858, writes:

> *Aguilar* was concerned with the ultimate trustworthiness of hearsay information. All hearsay was not to be rejected out of hand; neither was all hearsay to be uncritically accepted; some guidelines had to be devised to separate the wheat from the chaff. *Aguilar* sought first to ascertain the actual source of the incriminating information. The "basis of knowledge" prong was designed to locate that source and to examine the validity of his conclusion. It was not concerned with the integrity of the informant (that test would come later via the other prong) but only with his ratiocinative process—not with the honesty of his narration but with the nature of his perception: (How did he reash [sic] his conclusion? Did he see something or hear something first-hand or did he merely pass on a story or rumor from someone else? Or did he simply jump to a wrong conclusion on the basis of inadequate or ambiguous observations?) The simple thrust of the "basis of knowledge" prong was that the informant must not pass on his conclusion, let alone the conclusion of someone else, but must furnish the raw data of his senses, so that the reviewing judge could draw his own conclusion from that data.
> Once having located the original source—the person who saw, heard or smelled something firsthand—then and only then did *Aguilar* look to the "veracity" of that source. As a substitute for the classic trustworthiness device of the oath, it sought some alternative guarantee that the declarant spoke truthfully. It sought "some of the underlying circumstances from which the officer concluded

that his informant was 'credible,' or his information 'reliable'." The "veracity" prong, in precise terms, has two disjunctive spurs, seeking *either* a) the inherent "credibility" of the person himself *or* b) some other circumstances reasonably assuring the "reliability" of the information on the particular occasion of its being furnished."
> In outline form, *Aguilar* was concerned with:
>   The *Trustworthiness* of Hearsay
>   I. The *Basis of Knowledge* Prong
>   II. The *Veracity* Prong
>   A. The *Credibility* Spur
>   B. The *Reliability* Spur.

(Footnotes omitted). *See also* Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer*, 25 Mercer L.Rev. 741 (1974).

5. YOUR AFFIANT IS A MINNEAPOLIS POLICE SGT. WHO FOR THE PAST TWELVE YEARS HAS BEEN ASSIGNED TO THE NARCOTICS DIVISION AND IN THAT CAPACITY HAS BEEN INVESTIGATING THE DRUG TRAFFICING [sic] ACTIVITYS [sic] OF A ROBERT BUTTON WHO RESIDES AT 9236 10th Ave. So. in Bloomington Minn.

Over the past six months your affiant has been receiving information from a confidential reliable informant who your affiant knows to be a [sic] outstanding member of the community. This informant advised your affiant that the informant has someone close to the informant who has a severe drug problem caused from the use of Angel Dust (P.C.P.)[. T]he confidential informant stated the supplier of the Angel Dust is a Robert Button who resides at 9236 10th Ave. So. in Bloomington Minn. The informant stated that the informant has seen a large quanity [sic] of white powder that was repesented [sic] to be Angel Dust that the informant had observed to have come from the residence at 9236 10th Ave. So. The above informant stated that Robert Button is currently supplying Angel Dust to the person close to the informant.

Your affiant received information within the past week that a Tom Esterly is suppling [sic] large quanities [sic] of Angel Dust to local

subscribed and sworn to by the affiant before the state district judge on January 28, 1980. The search warrant was issued and executed the same date.

## II

### BASIS OF KNOWLEDGE

We first consider whether the affidavit meets the "basis of knowledge" requirement. In writing concerning the "basis of knowledge" prong of *Aguilar*, Professor La-Fave quotes from Justice Moylan's perceptive analysis in *Stanley v. State, supra*:

> The "basis of knowledge" test is not concerned one whit with an informant's honesty or "veracity." It is concerned, rather, with conclusionary validity. Even assuming "credibility" amounting to sainthood, the judge still may not accept the bare conclusion of that "credible" informant any more than he may accept the bare conclusion of a sworn and known and trusted police-affiant.... To do so would be an unconstitutional delegation of the decisionmaking function which the Fourth Amendment lodges exclusively in the judge himself.
>
> The "basis of knowledge" prong assumes an informant's "veracity," and then proceeds to probe and test his conclusion: ("What are the raw facts upon which the informant based *his* conclusion?" "How did the informant obtain those facts?" "What precisely did he see or hear or smell or touch firsthand?" "If he heard the facts from someone else,

what makes that third person 'credible' and how did that third person come by the knowledge?"). The judge must ascertain the source for the raw data—the product of someone's senses—and then weigh that data for himself. He is concerned not with that part of an affidavit or testimony which provides information *about* the informant but with the recitation of the story coming *from* the informant.

313 A.2d at 861 (footnote and citations omitted), *quoted with approval in* 1 W. La-Fave, *supra*, § 3.3 at 536.

In *Aguilar*, Justice Goldberg, writing for the majority, quoted from *Nathanson v. United States*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933): "Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from *facts or circumstances* presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough." (Emphasis added in *Aguilar, supra*, 378 U.S. at 112, 84 S.Ct. at 1512).

█ Reviewing the affidavit, it can be seen that the second informant, referred to in the second paragraph, does not implicate either defendant or the residence. Also, affiant's warrantless search of the garbage contents revealed nothing involving "angel dust" and thus would have no probative value on the issue of whether angel dust was then stored in the residence. The affidavit must stand or fall on the information

---

dealers. Your affiant received that information from a second informant who has supplied information to a fellow police officer in the past leading to several feloney [*sic*] arrests. The confidential informant mentioned in the first paragraph of this affidavid [*sic*] stated that the informant knows the source for the Angel Dust being sold by Tom Esterly is Robert Button.

On this date 1–28–80 your affiant received the garbage that had just been picked up from 9236 10th Ave. So. by the regular garbage man for 9236 10th Ave. So. on the regular pickup time for that residence.

In searching the garbage your affiant found a broken freebase system coated with what the city chemist analyzed [*sic*] to be Cocaine & a Cocaine snorting straw that was analyzied [*sic*] to be coated with Cocaine. A Free Base

system is a glass vaporizer used to vaporize Cocaine. The boken [*sic*] Free Base system sezed [*sic*] from the garbage appeared to have been used many times indicating a steady use of cocaine from the residence at 9236 10th Ave. So. in Bloomington Minnesota. Because of the cocaine taken from the garbage on this date and the reliable information that Robert Button is continuously suppling [*sic*] large quanitys [*sic*] of angel Dust to dealers your affiant does believe that Cocaine, Angel Dust & evidence of distribution wil [*sic*] be found in the residence at 9236 10th Ave. So. and in the possession of Robert Button.

Also seized from the garbage search on 1–28–80 along with the Cocaine was [*sic*] letters addressed to Robert Button in the same garbage bag.

supplied by the first informant. With but one exception, the first informant gave information which does not incriminate defendant or the residence, or gave simply conclusory statements and beliefs. The one exception is the statement:

> The informant stated that the informant has seen a large quanity [*sic*] of white powder that was repesented [*sic*] to be Angel Dust that the informant had observed to have come from the residence at 9236 10th Ave. So.

No underlying circumstances are given, nor any date or time of day or night. Informant does not state he was. in the residence, nor the circumstances (if he knew, which is left unanswered) under which the white powder came from the residence, nor what took place inside the residence in that regard. Defendant is not mentioned. In stating the white powder was angel dust the first informant relied on an unidentified source for informant's conclusion that the powder was angel dust. No underlying circumstances are given from which the magistrate could independently determine the "basis of knowledge" of *either* the first informant *or* the first informant's source.[6] As Justice White wrote in his separate concurrence in *Spinelli, supra,* 393 U.S. at 426, 89 S.Ct. at 594:

> [I]t seems that if it may be so easily inferred from the affidavit that the informant has himself observed the facts or has them from an actor in the event, no possible harm could come from requiring a statement to that effect, thereby removing the difficult and recurring questions which arise in such situations.

We conclude the affidavit fails the "basis of knowledge" prong of *Aguilar. See United States v. Taylor,* 599 F.2d 832 (8th Cir. 1979).

### III

### STALE PROBABLE CAUSE

"It is axiomatic by now that under the fourth amendment the probable cause upon which a valid search warrant must be based must exist at the time at which the warrant was issued, not at some earlier time." *United States v. Steeves,* 525 F.2d 33, 37 (8th Cir. 1975).

The only specific date in the affidavit in this case is that given by the police officer affiant. He avers that he searched the garbage on January 28, 1980, the date on which the warrant was issued. The information he received from the first informant came to him "over the past six months" (prior to January 28, 1980). Another court, faced with a similar affidavit, wrote:

> The Commonwealth would have us believe that the transactions occurred continuously "within the last two months." If that were the case it would have been very easy for the specific dates and times to be included in the affidavit. This would have eliminated any doubt as to when the transactions occurred. Since this was not done we are now forced to make an assumption as to when the transactions occurred. Generally when the courts are forced to make an assumption as to when transactions occurred "within" a given period, for purposes of determining probable cause, it must be assumed that the transactions took place in the most remote part of the given period.... The reason for this policy is

*Moylan, supra,* 25 Mercer L.Rev. at 750; *see also Spinelli, supra,* 393 U.S. at 416, 89 S.Ct. at 589; *United States v. Spach,* 518 F.2d 866, 869 (7th Cir. 1975).

This court has held that a magistrate need not categorically reject double hearsay information in an affidavit but rather is to evaluate it as well as all other information in the affidavit against *Aguilar* standards in order to assess its probative value. *United States v. Smith,* 462 F.2d 456, 459 (8th Cir. 1972).

---

**6.** The simple thrust of these decisions [*Aguilar-Spinelli*] is that whatever rules govern the evaluation of information from the primary source—the affiant—govern also the evaluation of information from the secondary source—the non-swearing, non-appearing, off-warrant declarant, *i. e.* the informant. Whether the magistrate is dealing with a primary, a secondary or even, theoretically, a tertiary source, he must still (1) assess the credibility of that source and (2) then weigh the information furnished if he believes it to be true.

obvious. If this were not the construction given to this phrase, stale information could be made to appear current by the mere use of "within" language. For example, if a dozen drug purchases were made in the first week of January and one wished to obtain a search warrant in the first week of March based solely on this information he would need only say that "within the last two months a dozen purchases were made", rather than "a dozen purchases were made in the first week of January".[7]

Although no factual underlying circumstances are offered to support his conclusion, the first informant is reported as having stated that defendant "is currently supplying Angel Dust to the person close to informant." In *Rosencranz v. United States*, 356 F.2d 310, 312 (1st Cir. 1966) the search warrant affidavit contained an averment that affiant "has reason to believe that on the premises . . . there is *now* being concealed certain property . . . ." (emphasis added).

The court reasoned:

The present tense is suspended in the air; it has no point of reference. It speaks, after all, of the time when an anonymous informant conveyed information to the officer, which could have been a day, a week, or months before the date of the affidavit. To make a double inference, that the undated information speaks as of a date close to that of the affidavit and that therefore the undated observation made on the strength of such information must speak as of an even more recent date would be to open the door to the unsupervised issuance of search warrants on the basis of aging information. Officers with information of questionable recency could escape embarrassment by simply omitting averments as to time, so long as they reported that whatever information they received was stated to be current at that time. Magistrates would have less opportunity to perform their

"natural and detached" function. Indeed, if the affidavit in this case be adjudged valid, it is difficult to see how any function but that of a rubber stamp remains for them.

356 F.2d at 316. *See also United States v. Salvucci*, 599 F.2d 1094 (1st Cir. 1979); *United States v. Boyd*, 422 F.2d 791 (6th Cir. 1970); 1 W. LaFave, *supra*, § 3.7 at 697; Comment, *A Fresh Look at Stale Probable Cause: Examining The Timeliness Requirement of the Fourth Amendment*, 59 Iowa L.Rev. 1308 (1974).

■ Courts also consider the nature of the property sought, in determining whether probable cause was shown to exist on the date of the warrant:

Although there can be no precise rule as to how much time may intervene between the obtaining of the facts and the issuance of the search warrant, in dealing with a substance like marihuana, which can be easily concealed and moved about, probable cause to believe that it was in a certain building on the third of the month is not probable cause to believe that it will be in the same building eight days later.

*Ashley v. State*, 251 Ind. 359, 367–68, 241 N.E.2d 264, 269 (1968); *see also United States v. Steeves, supra*, 525 F.2d at 38. The same applies to the question presented to the magistrate here: Does the factual information in the affidavit show that the drug "PCP" is probably in the residence *now*? Plainly the affidavit fails in that material respect, and thus probable cause was not shown as of the time of the issuance of the warrant. *Sgro v. United States*, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932); *Dandrea v. United States*, 7 F.2d 861 (8th Cir. 1925); *Siden v. United States*, 9 F.2d 241 (8th Cir. 1925); *Commonwealth v. Shaw*, 444 Pa. 110, 281 A.2d 897 (1971); *Comment, supra*, 59 Iowa L.Rev. 1308 (1974).

---

7. *Commonwealth v. Novak*, 233 Pa.Super. 236, 335 A.2d 773 (1975), *quoted with approval in* 1 W. LaFave, *supra*, § 3.7 at 695. *See also State*

*v. Hoffman*, 15 Or.App. 524, 516 P.2d 84, 85–86 (1973); *State v. Tella*, 113 R.I. 303, 321 A.2d 87 (1974).

## IV

### THE VERACITY PRONG OF AGUILAR

█ The police officer affiant, in the affidavit, stated: "over the past six months your affiant has been receiving information from a confidential reliable informant who your affiant knows to be a [sic] outstanding member of the community." The officer did not state that such information as he received was found to be correct or that he had independently verified any of the information. Affiant thus gave the magistrate no factual material upon which to make an independent evaluation. The magistrate was in effect asked to make the officer affiant's conclusion his own conclusion. Such a showing will not satisfy *Aguilar's* test. *McCreary v. Sigler*, 406 F.2d 1264 (8th Cir. 1969).

The Government argues that the first informant's reliability appears since he is shown by the affidavit to be a "citizen victim or eyewitness" to a crime. In *United States v. Rajewich*, 470 F.2d 666 (8th Cir. 1972), where the informant was identified and shown to be "a responsible operator of a legitimate business and the victim of the crime charged" the court wrote, *id.* at 668:

In *United States v. Bell*, 457 F.2d 1231, 1238 (5th Cir. 1972), the court states and holds:

"It is now a well-settled and familiar concept, as enunciated by *Aguilar* and *Spinelli*, that supporting affidavits in an application for a search warrant must attest to the credibility of an informant and the reliability of his information. *See also United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). We have discovered no case that extends this requirement to the identified bystander or victim-eyewitness to a crime, and we now hold that no such requirement need be met. . . ."

To like effect, see *McCreary v. Sigler*, 406 F.2d 1264, 1269 (8th Cir. 1969); *United States v. Mahler*, 442 F.2d 1172, 1174 (9th Cir. 1971).

The first informant here is unidentified in the affidavit.[8] But additionally there is nothing in the affidavit to show the informant was a crime victim or a disinterested bystander eyewitness. The only thing the informant purportedly witnessed, at an unstated date and time and under unstated circumstances, was "a large quanity [sic] of white powder that was represented to be Angel Dust that the informant had observed to have come from the residence at 9236 10th Ave. So."

[I]t would seem that courts should be cautious in accepting the assertion that one who apparently was present when narcotics were used or displayed is a presumptively reliable citizen-informer. Again, this is because as a general proposition it is an informant from the criminal milieu rather than a law-abiding citizen who is most likely to be present under such circumstances. This is not to suggest that a person giving information about the location of narcotics may *never* qualify as a citizen-informer, for it is sometimes possible to show with particularity how a law-abiding individual happened to come upon such knowledge. Rather, the point is that in such a case it should not be deemed sufficient that the police have alleged in a rather conclusory fashion that the person was "a responsible citizen of utmost character and integrity" or "a reputable member of the community." Perhaps a more particularized showing of the law-abiding nature of the person supplying the information will suffice, but when the informer's identity is not also disclosed it may be desirable to check out the truthfulness of such police allegations by requiring the described individual to appear in camera before a judicial officer.

8. It is clear that only disclosures to the magistrate at the time of an issuance of the search warrant can be the guiding determination. "It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention." *Aguilar v. Texas*, 378 U.S. at 109 n.1, 84 S.Ct. at 1511 n.1 (1964).

1 W. LaFave, *supra*, § 3.4 at 601–02 (footnotes omitted).[9]

Although the Government does not claim otherwise, we note that there is nothing in the four corners of the affidavit which can be construed as an admission against penal interest on the part of the first informant. *United States v. Hunley*, 567 F.2d 822, 825 (8th Cir. 1977).

The only information in the affidavit purporting to identify the "white powder" as a drug came, not directly from the first informant, but instead from an anonymous source who "represented" to the first informant that the powder was angel dust. Thus to the affiant and the magistrate this was hearsay based upon hearsay. The credibility or reliability of this secondary source must also be measured against *Aguilar* standards by the magistrate.[10] The affidavit furnishes no underlying circumstances whatsoever upon which the magistrate could exercise independent reasoned judgment concerning the secondary informant. Patently the information in the affidavit is insufficient to qualify the secondary informant as credible or reliable. The affidavit thus fails under the veracity prong of *Aguilar*.

## CONCLUSION

"Because of the kaleidoscopic myriad that goes into the probable cause mix 'seldom does a decision in one case handily dispose of the next.'" *United States v. Davis*, 458 F.2d 819, 821 (D.C.Cir.1972). We have concluded that under the facts in this record the affidavit and warrant do not survive Fourth Amendment scrutiny. In conclusion we quote from the majority opinion in *Spinelli, supra*, 393 U.S. at 419, 89 S.Ct. at 590–91 (footnotes omitted):

The affidavit, then, falls short of the standards set forth in *Aguilar, Draper*, and our other decisions that give content to the notion of probable cause. In holding as we have done, we do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223 [228], 13 L.Ed.2d 142, 147 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois*, 386 U.S. 300, 311, 87 S.Ct. 1056 [1062], 18 L.Ed.2d 62, 70 (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741 [745], 13 L.Ed.2d 684, 688 (1965); and that their determination of probable cause should be paid great deference by reviewing courts, *Jones v. United States*, 362 U.S. 257, 270–271, 80 S.Ct. 725 [735–36], 4 L.Ed.2d 697, 707, 708, 78 A.L.R.2d 233 (1960). But we cannot sustain this warrant without diluting important safeguards that assure that the judgment of a disinterested judicial officer will interpose itself between the police and the citizenry.

Accordingly, the judgment of the district court is reversed and vacated.

*McCreary v. Sigler*, 406 F.2d 1264, 1268 (8th Cir. 1969).

**9.** Professor LaFave's suggestion that such "citizen-informants" be brought before a magistrate accords with what this court wrote in *United States v. Hunley*, 567 F.2d 822, 827 n.8 (8th Cir. 1977):

> In our judgment these factors [the informant personally appeared before the magistrate and gave an eyewitness account] fully comply with Mr. Justice Harlan's suggestion given in his dissent in *Harris* that someone

who is, at least, someone who enjoys the confidence of criminals "could often be brought before the magistrate where he could assess their credibility for himself." 403 U.S. at 599, 91 S.Ct. at 2090.

For a suggestion for drafting the affidavit where the citizen-informer refuses the use of his or her name, *see State v. Siegfried*, 274 N.W.2d 113, 115 (Minn.1978).

**10.** *See* note 6 *supra*.