UNITED STATES of America, Appellee,

v.

**Odell SUMPTER, Jr., Appellant.**

**No. 81–1568.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1981.

Decided Feb. 10, 1982.

Rehearing and Rehearing En Banc Denied March 10, 1982.

Joseph Friedberg (argued), Friedberg & Peterson, Mark W. Peterson, Minneapolis, Minn., for appellant.

John M. Lee, U. S. Atty., Janice M. Symchych, Asst. U. S. Atty. (argued), D. of Minn., Minneapolis, Minn., Gerald Weinrich, Legal Intern, for appellee.

Before ROSS and STEPHENSON, Circuit Judges, and HOWARD,* District Judge.

* The Honorable George Howard, Jr., United States District Judge for the Eastern and Western District of Arkansas, sitting by designation.

ROSS, Circuit Judge.

Odell Sumpter, Jr. appeals his conviction on April 27, 1981, in the district court[1] for possession of a firearm by a convicted felon in violation of 18 U.S.C.App. § 1202(a) (1976). Appellant rests his appeal on the argument that the primary evidence offered against him at trial, a .22 caliber semi-automatic pistol, should have been suppressed. According to the appellant, this evidence was obtained in a search pursuant to a warrant which violated the fourth amendment because it was based on an affidavit insufficient to show probable cause.[2] After careful review of the appellant's arguments, we affirm the judgment of the district court.

*Background*

On February 5, 1981, a Minneapolis Police Department officer filed an affidavit in support of an application for a warrant to search the residence of the appellant for narcotic drugs and controlled substances including cocaine and marijuana. The affidavit stated:

Your affiant is a Sergeant with the Minneapolis Police Narcotics Division and over the past year has been investigating the illegal drug activities of Odell Sumpter, Jr. who resides at 4850 Oakland Avenue South. Your affiant has over the past year talked with at least two confidential reliable informants, both of whom have made prior felony cases for the Police Department through their cooperation. These two informants independently have advised your affiant that Odell Sumpter, Jr. is selling Cocaine out of his residence at 4850 Oakland Ave. South. The informant stated that Odell is charging $275.00 for ⅛th ounce packages of Cocaine, and that Odell Sumpter takes in stolen merchandise specifically clothing in exchange for Cocaine. On 2/2/81 the Minneapolis Police Department Narcotics Division received a letter from a party stating they were nearby neighbors of 4850 Oakland Avenue South. This letter states that this neighbor and other parties in the neighborhood are upset about the large amount of short term traffic, entering and leaving 4850 Oakland at all hours. The neighbors strongly suspect drug traffic. The writer of the letter enclosed eight license numbers of vehicles that arrived at that residence and left after a very short stay from five to fifteen minutes. Your affiant obtained registrations of those vehicles and found the owner of one of the vehicles had a recent arrest for possession of Cocaine, a second vehicle registered to a party the Narcotics Division executed search warrants for Drug Trafficking at. In March of 1975 your affiant and other officers executed a search warrant at this same dwelling, 4850 Oakland Avenue South, and seized a large quantity of Heroin and stolen merchandise and arrested Odell Sumpter, Jr. who was subsequently convicted in Federal Court and sentenced to Federal Prison. On this date, your affiant met with the garbage pick up man for 4850 Oakland Avenue South and retrieved the garbage from that residence after the garbage carrier had picked the garbage up in a routine pick up date. In searching the garbage, your affiant found a plastic baggie which contained a green substance which was analyzed on this date and found to be marijuana. The garbage carrier stated that while they were going up the alley, they observed three cars stop and enter 4850 Oakland Avenue South and after a very short time leave. Parked in the front of 4850 Oakland Avenue South was a 1977 red Mercedes, MN. FHF 212 which registers to Odell Sumpter, Jr. at 4850 Oakland Avenue South. Because of the above information and investigation your affiant does believe that a continuous drug traffic business is being carried on at 4850 Oakland Avenue South by Odell Sumpter, Jr.

---

1. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

2. Following an evidentiary hearing before United States Magistrate J. Earl Cudd on April 7, 1981, the district court denied the appellant's motion to suppress on April 24, 1981.

Based on the information contained in this affidavit the Hennepin County, Minnesota, District Court [3] authorized a warrant to search the appellant's residence for, *inter alia*, cocaine and marijuana. That same day, pursuant to this authorized search, a .22 caliber pistol was recovered from a closet in the appellant's residence. The appellant had a prior federal felony conviction on January 6, 1976, for use of a telephone to facilitate drug distribution.

*Sufficiency of the Affidavit*

■ In determining the sufficiency of an affidavit to establish probable cause for a search warrant, several basic principles must be kept in mind. Although we have noted that greater precision and care by affiants in drafting affidavits would substantially resolve the number of "close cases" concerning the sufficiency of search warrant affidavits,[4] it must be remembered that such affidavits "must be tested by and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *United States v. Ventresca*, 380 U.S. 102, 103, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965).

■ Moreover, it is well established that

only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois*, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062 [18 L.Ed.2d 62] (1967);

that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745 [13 L.Ed.2d 684] (1965); and that their determination of probable cause should be paid great deference by reviewing courts, *Jones v. United States*, 362 U.S. 257, 270–271, 80 S.Ct. 725, 735–736 [4 L.Ed.2d 697] (1960).

*Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). It is also axiomatic that, because of the myriad of unique factors that may go into a determination of probable cause, each case must be decided on its own facts; one decision seldom disposes of the next. *See United States v. Button*, 653 F.2d 319, 327 (8th Cir. 1981).

Essentially, the appellant attacks the affidavit using a piecemeal approach. He attempts to show that each element of the affidavit, when viewed independently, is insufficient to support a warrant. We cannot accept this approach. The determination of whether or not probable cause exists to issue a search warrant is to be "based upon a common-sense reading of the entire affidavit." *Spinelli v. United States, supra*, 393 U.S. at 415, 89 S.Ct. at 588; *United States v. Bamberger*, 482 F.2d 166, 170 (9th Cir.), *cert. denied*, 414 U.S. 1041, 94 S.Ct. 543, 38 L.Ed.2d 332 (1973).

■ Much of the appellant's argument in this case has addressed the sufficiency of that portion of the affidavit concerning the hearsay allegations (1) provided by two unidentified informants to the effect that the appellant was selling cocaine from his residence, and (2) provided in the anonymous letter from an alleged neighbor concerning frequent short term automobile traffic at the appellant's home.[5] In support of his

3. The Honorable Donald T. Barbeau, District Court Judge.

4. *United States v. Skramstad*, 649 F.2d 1259, 1262 n.4 (8th Cir. 1981).

5. Appellant also argues, based on this court's recent decision in *United States v. Button*, 653

F.2d 319 (8th Cir. 1981), that the information given by the two informants was too stale to provide probable cause since the information was only provided "over the past year." Because *Button* is clearly distinguishable, we reject the appellant's assertion. The court in *Button*, noting that it is axiomatic by now that the probable cause upon which a search war-

contention that the affidavit did not establish probable cause the defendant relies heavily on *Spinelli v. United States, supra; Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *United States v. Schmidt*, 662 F.2d 498 (8th Cir. 1981); *United States v. Button, supra; United States v. Skramstad*, 649 F.2d 1259 (8th Cir. 1981). These cases broadly rest on the *Aguilar-Spinelli* rule that where probable cause is based on a tip from an informant, the affidavit must set out some underlying circumstances which enable the magistrate to independently judge the validity of the informant's conclusions, and some of the underlying circumstances which support the reliability or credibility of the informant. In the absence of details as to the manner in which the informant gained the information, "it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating

in the underworld or an accusation based merely on an individual's general reputation." *Spinelli v. United States, supra*, 393 U.S. at 416, 89 S.Ct. at 589. *See Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978); *United States v. Strini*, 658 F.2d 593, 597–98 (8th Cir. 1981); *United States v. Holmes*, 594 F.2d 1167, 1170 (8th Cir.), *cert. denied*, 444 U.S. 873, 100 S.Ct. 154, 62 L.Ed.2d 100 (1979).

We believe that these cases do not necessarily control the instant case and, therefore, that appellant's reliance is misplaced. Unlike the situation presented by the instant case, each of these cases dealt with situations in which an affidavit in support of a search warrant rested entirely on the informant's tip or the informant's tip was essential to finding probable cause.[6]

The standard approach to determining if hearsay information obtained from a confidential informant supplies the necessary showing of probable cause is to first determine if the informant's report, stand-

---

rant is based must exist at the time when the warrant was issued, held that an affidavit which stated only that the information was supplied over the past six months, was too stale to provide probable cause at the time the warrant was issued. *Id.* at 325. The court reasoned that the crucial question was whether there was any factual information in the affidavit to show that the drug being sought under the warrant was currently in the residence.

In the present case, however, the affidavit does contain additional information which would clearly indicate that there was probable cause to believe that the appellant was engaged in ongoing drug related activity at the time the application for a warrant was made. On February 2, 1981, just three days before the warrant application, the police received a letter purporting to be from one of the appellant's neighbors who reported unusually heavy short term traffic entering and leaving the appellant's residence. A check of eight automobile license numbers provided in the letter revealed that one was registered to an individual recently arrested for possession of cocaine. Furthermore, on the same day that the warrant was sought, this report of many short term visitors to appellant's residence was corroborated by the garbage collector who advised the police that cars had stopped and individuals had entered and left the appellant's residence in the amount of time it took the garbage man to go up the alley.

This court has recognized that facts demonstrating the continuing nature of criminal activ-

ity may vitiate staleness of an informant's tip. *See United States v. Dennis*, 625 F.2d 782, 792 (8th Cir. 1980). *Cf. United States v. Harris*, 482 F.2d 1115, 1119 (3d Cir. 1973) (staleness judged on case-by-case basis depending on the nature of the criminal activity and consideration of facts in the affidavit indicating protracted and continuous nature); *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972) (where there is a mere isolated violation probable cause dwindles quickly, but passage of time is less significant where affidavit recites facts demonstrating continuous course of conduct).

**6.** The affidavit in *Aguilar* contained only the hearsay conclusions of an unidentified informant. *See* 378 U.S. at 109, 84 S.Ct. at 1511. In *Spinelli* "an unidentified informant's tip" was essential to establish probable cause. The only other information contained in the affidavit was a statement of the defendant's reputation as a gambler, and a recitation of an FBI surveillance which revealed only the defendant's "innocent-seeming conduct." *See* 393 U.S. at 413–15, 89 S.Ct. at 587–588. Similarly, *United States v. Schmidt, United States v. Button*, and *United States v. Skramstad*, were cases involving affidavits substantially based on uncorroborated hearsay of confidential informants. *See United States v. Schmidt*, 662 F.2d at 502; *United States v. Button*, 653 F.2d at 322 n.5; *United States v. Skramstad*, 649 F.2d at 1261.

ing alone, satisfies the *Aguilar* test that the affidavit aver sufficient underlying circumstances to establish that the informant's conclusion was valid and that the informant was credible or reliable. If the *Aguilar* test is not met, *Spinelli* establishes that the tip may still be adequate if it is sufficiently detailed or independently corroborated to be as trustworthy as one which would pass the *Aguilar* test. However, even if the tip is insufficient when independently corroborated, facts from the tip along with other facts alleged in the affidavit may meet the threshold requirements of probable cause. *Spinelli v. United States, supra*, 393 U.S. at 414–18, 89 S.Ct. at 588–590; *United States v. Scott*, 545 F.2d 38, 40 (8th Cir.), *cert. denied*, 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977).

 Contrary to appellant's assertions, there is little question that the tip by the informants in the instant case meets the *Aguilar* veracity standard, *i.e.*, the reliability or credibility of the informant. The affidavit alleges that the two informants have "made prior felony cases for the police." It is well established that a statement in an affidavit that an informant has provided reliable information in the past is sufficient to establish the reliability or credibility of the informant. *United States v. Schmidt, supra*, 662 F.2d at 502; *United States v. Hunley*, 567 F.2d 822, 825 (8th Cir. 1977). *See United States v. Skramstad, supra*, 649 F.2d at 1262 (information by informant led to arrests in the recent past for narcotics offenses); *United States v. Scott, supra*, 545 F.2d at 39, 40 (narcotics information supplied by informant found to be reliable on three or four prior occasions). *But see United States v. Schmidt, supra*, 662 F.2d at 503 (conclusory allegation that informant provided correct information in the past is not enough).

We believe the allegation in this case of "making prior felony cases" is substantially indistinguishable from that in *Skramstad* of providing information leading to arrests, and thus, satisfies the veracity prong of *Aguilar*. To conclude otherwise would be to subject incorrectly the affidavit in this case to the kind of hypertechnical scrutiny typical of an essay contest, an approach

that has been firmly rejected. *See United States v. Harris*, 403 U.S. 573, 579, 91 S.Ct. 2075, 2079, 29 L.Ed.2d 723 (1971); *United States v. Ventresca, supra*, 380 U.S. at 108, 85 S.Ct. at 745; *United States v. Lyon*, 567 F.2d 777, 782 (8th Cir. 1977), *cert. denied*, 435 U.S. 918, 98 S.Ct. 1476, 55 L.Ed.2d 510 (1978).

Whether the basis of knowledge prong of the *Aguilar* test is satisfied, *i.e.*, whether underlying circumstances upon which the informant based his conclusion have been shown, is a more difficult question in the instant case, even when viewed under the corroborating facts or details test announced in *Spinelli*. However, it is a question we need not answer in light of additional elements in the affidavit which, when considered with the informants' tips, meet the minimum requirements of probable cause. *Cf. United States v. Scott, supra*, 545 F.2d at 40 (informant's tip along with suspicious circumstances supplied probable cause for arrest even though the basis of knowledge prong of *Aguilar* might not have been met).

In contrast to the affidavits in cases where probable cause was based almost entirely on a confidential informant's tip, the affidavit in the present case contained, in essence, the following additional information:

1. In 1975 the appellant had been arrested, convicted and sentenced on drug related charges after a search of his residence resulted in the seizure of a large quantity of heroin and stolen merchandise.

2. The garbage collectors for the appellant's residence reported to the police that they had observed the occupants of three cars stop, and enter and leave appellant's residence in a very short time on the morning of the search.

3. A search of the garbage from the appellant's residence after it had been routinely collected on the day of the search produced a baggie containing marijuana.

4. A letter purporting to be from appellant's neighbors stated that they had

observed a large amount of short term traffic at appellant's residence. The letter provided the license numbers of eight vehicles which had arrived and departed from appellant's residence within a very short period of time. One of these vehicles was registered to an individual with a recent arrest for possession of cocaine, and another was registered to an individual who had recently been the subject of a drug trafficking search warrant.

The importance of this additional information particularly the results of the garbage search, is obvious. Although appellant argues that the search of his garbage violated the fourth amendment, courts have consistently held that garbage searches like the one in this case are constitutional. *See, e.g., United States v. Biondich*, 652 F.2d 743, 745 (8th Cir. 1981). In *Biondich*, this court explained its holding as follows:

> When a person makes arrangements with a sanitation service to have the items picked up, however, and when the items are placed in the designated place for collection and the regular collector makes the pickup in the usual manner on the scheduled collection day, the person loses his or her legitimate expectation of privacy in the items at the time they are taken off his or her premises.

652 F.2d at 745.

■ Moreover, it is well established that affidavits based almost entirely on the evidence garnered from garbage may be sufficient to support a finding of probable cause. *See id.; United States v. Reicherter*, 647 F.2d 397, 398 (3d Cir. 1981); *Magda v. Benson*, 536 F.2d 111, 112–13 (6th Cir. 1976); *United States v. Dzialak*, 441 F.2d 212, 215 (2d Cir.), *cert. denied*, 404 U.S. 883, 92 S.Ct. 218, 30 L.Ed.2d 165 (1971). In *United States v. Biondich, supra,* a search of the defendant's trash revealed a baggie containing a small amount of marijuana, a folded piece of paper containing traces of opiate powders, cancelled checks payable to the wife of a man who had pled guilty to possession of a large quantity of marijuana and who had been at a residence where

evidence of narcotics transactions had been obtained, and pieces of paper containing notations representing large sums of money. An affidavit containing this information and the details of the defendant's two prior convictions for drug violations was held to be sufficient to support the conclusion that there was probable cause to believe that illegal drugs were present in the defendant's residence. 652 F.2d at 744, 746.

Although the evidence gleaned from the garbage search alone in this case might be sufficient, other facts bolster the sufficiency of the affidavit in establishing probable cause to believe that illegal drugs would be found. First, as noted previously, even if it is assumed that the information which was provided by the confidential and anonymous informants does not meet the *Aguilar-Spinelli* requirements, this information may still be considered by the magistrate in his determination as to probable cause. In *Spinelli*, the Court stated:

> We conclude, then, that in the present case the informant's tip—even when corroborated to the extent indicated—was not sufficient to provide the basis for a finding of probable cause. *This is not to say that the tip was so insubstantial that it could not properly have counted in the magistrate's determination.* Rather, it needed some further support. When we look to the other parts of the application, however, we find nothing alleged which would permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed.

393 U.S. at 418, 89 S.Ct. at 590 (emphasis added).

■ There is little question in the present case that the allegation that two informants, who had previously made felony cases for the police, had independently informed the affiant that the appellant was selling cocaine for $275 per one-eighth ounce and accepting stolen merchandise in exchange was probative on the question of probable cause to suspect that appellant was engaging in illegal drug activity at his residence. Similarly, the letter, allegedly from a neighbor, received three days before the day of the search, properly could be

considered in determining if there was probable cause to support illegal drug related activity at appellant's residence. This is particularly true since that information was corroborated by a similar observation made by garbage collectors on the morning of the search.

We cannot accept appellant's argument that such activity is like the FBI's observations of the comings and goings of the defendant in *Spinelli* which the Supreme Court refused to find sufficiently suspicious.[7] *See Spinelli, supra,* 393 U.S. 418–19, 89 S.Ct. at 590. Instead, the independently corroborated and detailed observations of frequent short term traffic entering and leaving the appellant's residence is the kind of "abnormal activity" which raises a suspicion of drug-related criminal conduct when viewed against the other circumstances alleged in the affidavit. Therefore, they are at least somewhat probative as to probable cause for believing that drug trafficking is occurring.

 Finally, it is clear that an individual's prior criminal activities and record have a bearing on the probable cause determination. *See United States v. Biondich, supra,* 652 F.2d at 744, 746; *United States v. Briscoe,* 574 F.2d 406, 409 (8th Cir.), *cert. denied,* 439 U.S. 858, 99 S.Ct. 173, 58 L.Ed.2d 165 (1978). Although in the instant case the facts concerning the appellant's prior record were not presented with optimum clarity and attention to detail, the judge reviewing the application was clearly apprised of the relevant fact that the appellant had previously been arrested and convicted for drug-related activities. Therefore, this allegation carries at least some weight in the probable cause determination.

*Conclusion*

Although each allegation in the affidavit, standing alone, may not be sufficient in the instant case, we believe that the coalescence of all these factual allegations leads to the

inescapable conclusion that there was a sound basis to believe that probable cause existed to issue the warrant to search the appellant's residence for narcotic drugs and controlled substances. To conclude otherwise would ignore substance in favor of rigid requirements of form, and place "niggardly limitations" on common sense. *See Spinelli v. United States, supra,* 393 U.S. at 419, 89 S.Ct. at 590.

Affirmed.

---

7. In *Spinelli,* the FBI alleged that Spinelli had been observed for five days during which he went from Illinois into St. Louis, Missouri, between 11 a. m. and 12:15 p. m. on four occasions. On four of the five days Spinelli was also observed parking his car in a lot reserved

for residents of a particular apartment house in St. Louis, and on one occasion he was seen to enter a particular apartment. That apartment contained two phones listed in another individual's name. 393 U.S. at 413–14, 89 S.Ct. at 587–588.