865 F.2d 1261
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arthur William SMITH, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arthur William SMITH, Defendant-Appellant.
 Nos. 88-5026, 88-5027.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 9, 1988.
Decided: Jan. 10, 1989.
Rehearing Denied Feb. 14, 1989.
 
 Gilbert Kenneth Davis (Davis and Associates, on brief), for appellant.
 Kenneth Martin Sorenson, Assistant United States Attorney (John P. Alderman, United States Attorney, on brief), for appellee.
 Before JAMES DICKSON PHILLIPS, CHAPMAN and WILKINS, Circuit Judges.
 CHAPMAN, Circuit Judge:
 
 
 1
 Arthur William Smith entered guilty pleas to possession of an American bald eagle in violation of 16 U.S.C. Sec. 668; to importing wildlife in violation of 16 U.S.C. Sec. 1538(a)(1)(A); and to receiving a 10 gauge shotgun as a convicted felon in violation of 18 U.S.C. Sec. 922(h)(1); 924(a). These pleas were made and accepted under Federal Rule of Criminal Procedure 11(a)(2). Smith reserved his right to appeal the prior orders of the court which had denied his motions to suppress evidence secured as a result of searches of his residence. We find no error, and we affirm.
 
 
 2
 * There were three search warrants issued in this case. The first was upon an application and affidavit submitted by a warden of the Virginia Game Commission. This warrant was issued by Virginia Circuit Judge Perry Sarver on July 3, 1986, and a search of the appellant's residence in Shenandoah County, Virginia, was executed on that date. This search resulted in the seizing of a mounted American bald eagle, a mounted snowy owl, a mounted pileated woodpecker, a mounted American magpie and a mounted great horned owl.
 
 
 3
 On July 30, 1986, two federal search warrants were issued by a United States Magistrate. The first was issued upon an application of the Law Enforcement Division of the Department of Fish and Wildlife, and upon the affidavit of Special Agent D. R. Patterson. The second warrant was upon application of the Bureau of Alcohol, Tobacco and Firearms and upon the affidavit of Special Agent M.S. Russell. These warrants were for a search of appellant's residence and they were executed on the date of issue.
 
 
 4
 The Fish and Wildlife warrant sought evidence relating to illegal wildlife activities including:
 
 
 5
 Receipts, cancelled checks, notes, letters, photographs, slides, negatives and/or other documentation of the killing, collecting, possession, mounting and disposition of migratory birds, Bald Eagles, and Brown and Grizzly Bears taken, possessed, transported, or disposed of in violation of 16 U.S.C. 703-712; 16 U.S.C. 668-668(c); 16 U.S.C. 1531-1543; or 16 U.S.C. 3373-3378.
 
 The ATF warrant sought:
 
 6
 firearms; to wit; several rifles, a shotgun, and pistol of various calibers and gauges, the means and instruments used in the acquisition or transfer of such firearms which reflects ownership of the firearms including but not limited to sales receipts or bills of sale.
 
 
 7
 In addition to the three search warrants, evidence was obtained when the Shenandoah County Grand Jury on August 13, 1986 issued a subpoena to Attorney Harry Deffendal directing him to turn over to the Grand Jury all items delivered to him by one Donna Peet following the July 3, 1986 search of Smith's residence. Peet lived at the Smith residence, and she was present during the searches of July 3 and July 30, 1986. Attorney Deffendal moved to quash the Grand Jury subpoena. He claimed that he was Smith's attorney and that production of any of the items subpoenaed would violate the attorney-client privilege. He also claimed that production of any of these items might tend to incriminate him. This motion to quash the subpoena was denied, and he produced the 10 gauge shotgun, several other firearms, and a mounted Jaguar hide.
 
 
 8
 The affidavit supporting the July 3, 1986 warrant was executed by Virginia Game Warden J.P. Slater, Jr. It alleged that the appellant had in his possession illegal wildlife mounts, that this information was based upon first hand viewing of these mounts by an informant, and that the informant was known to the officer to have good character and a good reputation for truth and veracity. The affidavit also stated that Smith had been stopped in February 1985 by the U.S. Customs Service in Texas and admitted attempting to smuggle exotic animal skins and skulls, including Jaguars and crocodiles, into the United States and paid a fine as a result. The affidavit did not advise the court that the informant was Barbara Wachter, a state police officer, or that she had been in the Smith residence on June 30, 1986.
 
 
 9
 In the affidavit by Special Agent D.R. Patterson of the Fish and Wildlife Service, he affirmed that he had participated in the search on July 3, 1986, that various protected migratory birds were found mounted in appellant's residence, that there were voluminous photographs and documentation indicating other violations of federal game laws, that some of these documents indicated that appellant, who had been a big game guide in Alaska, may have been violating the game laws by killing too many brown or grizzly bears and by illegally fishing for salmon, that the confidential informer used by the Virginia game warden had been advised by Smith that the mounted bald eagle had been killed in 1970 or 1971 and it was to replace a mounted bald eagle that had been seized from him by Alaska authorities in 1968 or 1969, that the second offense under the Bald Eagle Protection Act is a felony, and that records were needed to determine if other mounted birds were taken before or after the act protecting them was passed.
 
 
 10
 The affidavit of ATF Agent M.F. Russell stated that Arthur William Smith had been convicted of grand larceny on July 7, 1975, that a federal search warrant issued February 4, 1980 had found twenty-six firearms, three sticks of dynamite and ninety blasting caps at Smith's home, that Smith was subsequently convicted of the felony offenses of transporting in interstate commerce a firearm which had the manufacturer's serial number removed and transportation of an explosive in interstate commerce by a convicted felon, that Virginia Game Warden Slater had advised Russell that the July 3, 1986 search revealed a 12 gauge shotgun and three 30.06 caliber rifles, that Russell had interviewed Donna Peet at the Smith residence on July 16, 1986 and she had produced a .357 caliber pistol, that there was cause to believe that these weapons were still at the Smith residence and that a search was necessary to seize evidence which reflects the transfer of ownership of the weapons.
 
 
 11
 On September 30, 1987, Smith's motions to suppress were heard and denied. He contended that the search warrants, particularly the July 3, 1986 warrant, lacked probable cause and that the scope of the searches was unconstitutionally broad and that many of the items seized were beyond the authority of the warrants.
 
 II
 
 12
 On appeal Smith has again raised the issue of the validity of the search warrants. He claims that they were not based upon legally sufficient determinations of probable cause and that the items seized pursuant to the execution of these warrants should be suppressed. In Illinois v. Gates, 462 U.S. 213 (1983), the court set forth the "totality-of-the-circumstances analysis" applicable to probable-cause determinations for issuing search warrants. At 238-239 the court stated:
 
 
 13
 For all these reasons, we conclude that it is wiser to abandon the "two-pronged test" established by our decisions in Aquilar and Spinelli. In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations. See Jones v. United States, supra; United States v. Ventresca, 380 U.S. 102 (1965); Brinegar v. United States, 338 U.S. 160 (1949). The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit before him, including the "veracity" and the "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. Jones v. United States, 362 U.S., at 271. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interest that the Fourth Amendment requires than does the approach that has developed from Aquilar and Spinelli.
 
 
 14
 In applying the Gates rule to the three search warrants issued in this case and attacked in this appeal, we find that they all meet the "totality-of-the-circumstances analysis." The July 3, 1986 affidavit described in detail the place to be searched and the contraband to be seized, including the mounted American bald eagle, which is the subject of one of the counts in the indictment to which the appellant pled guilty.
 
 
 15
 The affidavit of the Virginia Game Warden did not name the informant but stated:
 
 
 16
 The informant by whom I was advised of the facts set forth in this affidavit is known by me to have a reputation for truth and veracity and is of good character. Information from, and testimony by the informant have on various occasions in the past led to the prosecution and conviction of persons for violations of Virginia law.
 
 
 17
 In United States v. Sumpter, 669 F.2d 1215, 1220 (8th Cir.1982) the court stated: "It is well established that a statement in an affidavit that an informant has provided reliable information in the past is sufficient to establish the reliability or credibility of the informant." See United States v. Schmidt, 662 F.2d 498 (8th Cir.1981); United States v. Hunley, 567 F.2d 822 (8th Cir.1977). Sumpter also held that the appellant's prior criminal activities and record have a bearing on the probable cause determination. Id. at 1222.
 
 
 18
 The affidavit for the July 3, 1986 search warrant stated that it was requested in relation to an offense of unlawful possession and importation of wild birds and animals, their carcasses and/or parts thereof in violation of Sec. 29-143(k) of the Code of Virginia. It is a violation of this statute to possess various wild birds, animals and their carcasses except as provided by law, and it is against the Virginia law to possess an American bald eagle. Under the Gates analysis, there was sufficient information submitted to the magistrate to support his probable-cause determination and issuance of the warrant. The affidavit of Game Warden Slater stated that the Smith residence was known to have contained a mounted American bald eagle on June 3, 1986, and gave the "basis of knowledge of persons supplying hearsay information." There was a fair probability that contraband would be found because possession of a mounted American bald eagle violated Virginia law.
 
 
 19
 The affidavit of Special Agent D.R. Patterson of the U.S. Fish and Wildlife Service was sufficient under the Gates analysis to support the probable-cause determination by the magistrate and the issuance of the search warrant. Ordinarily a search warrant should not be issued simply to search for documentation to see if an individual is in lawful possession of an item. However, the question before the magistrate is whether probable-cause exists to believe that a crime has been committed and that evidence of the crime will be recovered. The affidavit set forth a list of the mounted birds that were seized on July 3, 1986, particularly the American bald eagle, and then went on to explain that, because of statements made by the appellant to the informant, there was probable-cause to believe that this particular mount had been obtained after the enactment of the Bald Eagle Protection Act. Other information in the affidavit explained the importance of the dates of certain occurrences depicted in photographs of slain wildlife, and of articles that were present or not present at the time of the February 4, 1980 search which had resulted in a felony conviction.
 
 
 20
 The information presented to the United States Magistrate by the special agent for the ATF was even more compelling. The affidavit set forth the felony convictions of the appellant, a conversation of the affiant with Virginia Game Warden Slater, who reported a 12 gauge shotgun and three 30.06 rifles in the appellant's house at the time of the July 3, 1986 search, and the interview with Donna Peet at which she produced a .357 caliber pistol. If appellant had either actual or constructive possession of any of these weapons, or if he had received them, he would be guilty of a federal crime.
 
 
 21
 Appellant contends that the district judge was in error in failing to rule upon the Virginia Game Warden's claim of good faith in executing the first search warrant. The district judge obviously found no defect in this warrant or its supporting affidavit, and there was no reason to discuss good faith. We agree with his handling of this point.
 
 III
 
 22
 Smith claims that items outside the scope of the search warrants were seized and therefore all evidence obtained by the warrants should be suppressed. In Andresen v. Maryland, 427 U.S. 463, 482-84 (1976), the Court held that seizure of items outside of a warrant does not affect the admissibility of items that fall within the warrant. We have recently stated in United States v. Shilling, 826 F.2d 1365, 1369 (4th Cir.1987), "[t]he exclusionary rule does not compel suppression of evidence properly covered by a warrant merely because other material not covered by the warrant was taken during the same search, especially where, as in this case, such other materials were not received into evidence against the defendant."
 
 
 23
 Smith pled guilty to possession of an American bald eagle, importation of a Jaguar carcass and receipt of a 10 gauge shotgun. The mounted bald eagle was seized during the July 3, 1986 search and was specifically mentioned in the application for the search warrant that we have found to be valid. The production of the Jaguar carcass and the 10 gauge shotgun resulted from the subpoena issued by the Shenandoah County Grand Jury, so neither were subject to or seized by one of the three search warrants. The documentation tracing the shotgun to Smith was seized by the ATF under its July 30, 1986 warrant and is covered by the valid warrant which authorized seizure of the "means and instruments used in the acquisition or transfer of such firearms which reflect ownership of the firearms, including, but not limited to, sales receipts or bills of sale." The evidentiary foundations for the three convictions are solid and entirely legal. Therefore, anything seized outside the scope of the warrants was not applicable to these offenses and is of no moment.
 
 
 24
 AFFIRMED.