**STATE of North Dakota, Plaintiff and Appellee,**

v.

**James RONNGREN and Judy Ronngren, Defendants and Appellants.**

**Crim. Nos. 1023, 1024.**

Supreme Court of North Dakota.

Jan. 16, 1985.

See also N.D., 356 N.W.2d 903.

Charles J. Gilje, State's Atty. (argued), Jamestown, and Robert Udland, Asst. Atty. Gen., Bismarck, for plaintiff and appellee.

Cecelia Ann Wikenheiser, of Hjellum, Weiss, Nerison, Jukkala, Wright & Paulson, Jamestown, for defendants and appellants.

VANDE WALLE, Justice.

James and Judy Ronngren have appealed from judgments of conviction on charges of possession of a controlled substance with intent to deliver. We affirm.

For several days in October 1983, State and local law-enforcement officers conducted a surveillance of the Ronngren residence in Jamestown. Some of the surveillance activities were conducted from the home of the Ronngrens' neighbors, the Kollmans. On October 20, 1983, the Stutsman County State's Attorney and members of the surveillance team sought a search warrant from the county court. Following the hearing, during which the court viewed a video tape of activities at the premises and heard testimony from the officers, the court issued the warrant. The warrant authorized the officers to search James, the Ronngren residence, and the Ronngrens' vehicle for various items relating to "evidence of an operation to sell controlled substances...."

When the officers executed the warrant, James was the only person at the residence. The search of the residence produced bags of marijuana, drug paraphernalia, a scale, and $1,835 in cash. Judy and the Ronngren vehicle were later located and she was placed under arrest. The vehicle and Judy's purse were subsequently searched.

The Ronngrens were charged with possession of a controlled substance with intent to deliver pursuant to § 19–03.1–23(1), N.D.C.C. They moved to suppress "any and all evidence gathered by law-enforcement officers while executing a search warrant obtained from the Stutsman County Court on the 20th day of October, 1983." The trial court suppressed all evidence obtained from the search of the vehicle and Judy's purse, but refused to suppress the evidence obtained from the search of the Ronngren residence.

The Ronngrens were found guilty in a bench trial. On appeal, the Ronngrens assert that the evidence seized from their residence should not have been admitted at trial because the search warrant was issued without probable cause and because the officers failed to comply with the "knock and announce" rule while executing the warrant. They also assert that their convictions should be reversed because the State "deliberately" violated the trial court's sequestration order during the suppression hearing.

PROBABLE CAUSE

The Ronngrens attack the legal validity of various types of information presented by the officers to the county court during the search-warrant hearing and assert that without this "incompetent and illegally obtained data" the evidence was insufficient to establish probable cause.

A substantial portion of their argument centers on the assertion that hearsay testimony regarding the reputations of several people who visited their residence during the surveillance is entitled to no weight in the probable-cause determination. The officers observed a number of short-term visitors at the Ronngren residence. The agents recorded the license numbers on the visitors' vehicles and the names of the owners were obtained through the State Radio Communications System. At the search-warrant hearing, the officers essentially testified that, from what they had heard from people in the community, the vehicle owners had reputations of being drug users. The Ronngrens assert that this testimony fails to meet the test set forth in

*Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). They recognize that the United States Supreme Court, in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), rejected the *Aguilar-Spinelli* two-pronged test in favor of a more general "totality of the circumstances" approach, but urge that we retain the *Aguilar-Spinelli* requirements under the North Dakota Constitution, and argue, in the alternative, that this information does not meet the requirements of *Gates.*

The Ronngrens also assert that a binocular surveillance of their residence, through an uncurtained window, constituted an illegal search; that a garbage bag, which had been removed from their property by a dog, was illegally searched; and that some of the testimony offered during the search-warrant hearing was "stale or false or untrustworthy" and could not be considered by the county court in its probable-cause determination.

It is unnecessary to reach all of these issues because we conclude that the evidence obtained from the search of the garbage bag, when considered with the unusual amount of traffic at the Ronngren residence and the testimony regarding the reputations of the vehicle owners, was sufficient to support a determination of probable cause.

During the search-warrant hearing, the following colloquy occurred between State's Attorney Gilje and agent Sohm:

"SOHM: At the evening hours or the afternoon hours yesterday, the 19th, I was informed by an individual that he had in his possession a garbage bag from the Ronngren residence.

"GILJE: Wasn't it Kollman that told you that?

"SOHM: Yes sir, Mr. Kollman. He had informed me during a casual of [sic] conversation that the garbage bag had been placed outside of the Ronngren residence a few days ago. That this bag had been drug across to his yard by a dog, and that he had secured the

bag and placed it in his trash container for removal by the sanitation service. At this time I requested that Mr. Kollman give me that bag and I took custody of the bag in the evening hours of the 19th.

"GILJE: That bag had been opened and [sic] examined the contents?

"SOHM: Ah, the bag had been opened, appeared to have been torn open and some of the product in the bag had been spilled out.

. . . . .

"GILJE: Now what, was it ah, the bag itself, was it of a black color?

"SOHM: It was a white trash bag, color plastic, similar to those that are present outside the Ronngren residence at this time.

"GILJE: Kollman was satisfied that that belonged to Ronngren, is that right?

"SOHM: He stated to me that it was from the Ronngren residence.

"GILJE: Okay. What did you find in that insofar as any marijuana or marijuana paraphernalia?

"SOHM: In a small section of the plastic bag we found numerous amounts of marijuana seeds, a small quantity of marijuana stems and sticks and a used marijuana cigarette, commonly referred to as a roach. It was a small corner of a white paper with burned edges on it."

The Ronngrens first claim that this information was not trustworthy because no showing was made that Kollman saw the dog drag the bag from the Ronngren residence and no facts were presented to show how Kollman knew that the bag once belonged to the Ronngrens. The Ronngrens concede that Kollman was a "citizen informant." A named "citizen informant" differs significantly from a paid police "tipster" or confidential informant whose identity is being protected and we have noted that a magistrate must take into account the status of an informant in judging his credibility or reliability. See *State v. Klosterman,* 317 N.W.2d 796 (N.D.1982);

*State v. Schmeets,* 278 N.W.2d 401 (N.D. 1979). The reliability of a citizen informant "should be evaluated from the nature of his report, his opportunity to hear and see the matters reported, and the extent to which it can be verified by independent police investigation." *State v. Paszek,* 50 Wis.2d 619, 631, 184 N.W.2d 836, 843 (1971). See generally 1 W. LaFave, *Search and Seizure,* § 3.4 (1978).

In this case, Kollman was the next-door neighbor of the Ronngrens. The information was corroborated by the agent's testimony that the garbage bag searched was similar to those present outside the Ronngren residence at the time of the search-warrant hearing. The circumstances were such that the county court could properly conclude that the garbage bag originated at the Ronngren residence.

The Ronngrens contend that they had a reasonable · expectation of privacy in the items deposited in the trash bag and that the subsequent search of the bag was unconstitutional because Kollman "was obviously acting as an agent of the police, even if a dog originally seized the bag." They rely primarily upon the California Supreme Court decisions in *People v. Edwards,* 71 Cal.2d 1096, 80 Cal.Rptr. 633, 458 P.2d 713 (1969), and *People v. Krivda,* 5 Cal.3d 357, 96 Cal.Rptr. 62, 486 P.2d 1262 (1971), *vacated,* 409 U.S. 33, 93 S.Ct. 32, 34 L.Ed.2d 45 (1972), *reaffirmed,* 8 Cal.3d 623, 105 Cal.Rptr. 521, 504 P.2d 457, *cert. denied,* 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145 (1973), which essentially hold that a person discarding trash has a reasonable expectation that his trash will not be rummaged through and picked over by police without a search warrant, and therefore that a warrantless search of one's trash violates the Fourth Amendment. However, many courts have held that no reasonable expectation of privacy exists once trash has been deposited for collection in a public area, in close proximity to a public way, or in an outdoor communal trash container serving an apartment building. E.g., *United States v. Michaels,* 726 F.2d 1307 (8th Cir. 1984), and cases cited therein; *Smith v.*

*State,* 510 P.2d 793 (Alaska), *cert. denied,* 414 U.S. 1086, 94 S.Ct. 603, 38 L.Ed.2d 489 (1973); *Stone v. State,* 402 So.2d 1330 (Fla. Dist.Ct.App.1981); see generally Annot., 28 A.L.R. 4th 1219 (1984).

The cases discussing this issue have generally involved circumstances where either law-enforcement officers search garbage containers located on or near the defendant's property or where officers make arrangements with garbage collectors to keep a person's garbage separate for purposes of a later search. That is not what happened in this case.

The Ronngrens placed a garbage bag outside their residence. A dog "seized" the trash bag, at the behest of no one, and transported it into Kollman's yard. Kollman, at the behest of no one, deposited the bag in his own trash can. During a subsequent "casual conversation" with a member of the surveillance team, Kollman mentioned this incident. The officer asked Kollman for custody of the garbage bag and he complied. The search was then conducted.

The Fourth Amendment places a limitation on government action only. *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). Certainly this scenario is not one in which Kollman or the dog acted as agents of the police and searched and seized the bag pursuant to their instigation and direction. See *State v. Matthews,* 216 N.W.2d 90 (N.D.1974). If the Ronngrens had an expectation of privacy in the trash contained in the garbage bag after it had been removed from their property by a dog and placed in their neighbor's garbage can, it was not a reasonable expectation. The search of the garbage bag did not violate the Ronngrens' Fourth Amendment rights.

This case is somewhat analogous to the Eighth Circuit Court of Appeal's decision in *United States v. Sumpter,* 669 F.2d 1215 (8th Cir.1982). In *Sumpter,* which was decided before the Supreme Court issued its decision in *Gates,* an officer filed an affidavit in support of an application for a warrant to search the residence of the ap-

pellant for narcotic drugs and controlled substances. Much of the appellant's argument on appeal centered on the insufficiency, under *Aguilar-Spinelli*, of a portion of the affidavit concerning hearsay allegations provided by two unidentified informants to the effect that the appellant was selling cocaine from his residence and provided in an anonymous letter from an alleged neighbor concerning frequent short-term automobile traffic at the residence. The affidavit also contained an allegation that a search of garbage from the appellant's residence after it had been routinely collected produced a baggie containing marijuana. The court found it unnecessary to decide whether or not the *Aguilar-Spinelli* requirements had been satisfied, but determined that the garbage search was constitutional. The court, concluding that probable cause existed for issuance of the warrant, stated:

"Although the evidence gleaned from the garbage search alone in this case might be sufficient, other facts bolster the sufficiency of the affidavit in establishing probable cause to believe that illegal drugs would be found. First, as noted previously, even if it is assumed that the information which was provided by the confidential and anonymous informants does not meet the *Aguilar-Spinelli* requirements, this information may still be considered by the magistrate in his determination as to probable cause. In *Spinelli*, the Court stated:

"We conclude, then, that in the present case the informant's tip—even when corroborated to the extent indicated—was not sufficient to provide the basis for a finding of probable cause. *This is not to say that the tip was so insubstantial that it could not properly have counted in the magistrate's determination.* Rather, it needed some further support. When we look to the other parts of the application, however, we find nothing alleged which would permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed.

"393 U.S. at 418, 89 S.Ct. at 590 (emphasis added)." *Sumpter, supra,* 669 F.2d at 1221.

The court also noted:

"[T]he independently corroborated and detailed observations of frequent short term traffic entering and leaving the appellant's residence is the kind of 'abnormal activity' which raises a suspicion of drug-related criminal conduct when viewed against the other circumstances alleged in the affidavit. Therefore, they are at least somewhat probative as to probable cause for believing that drug trafficking is occurring." *Sumpter, supra,* 669 F.2d at 1222.

We agree with the rationale of the *Sumpter* court. In the present case, the officers were informed by Kollman that "[t]here's traffic coming in and out of that place at all times of the day." This information was corroborated by the officers when they observed 15 to 20 different vehicles at the Ronngren residence during a 13-hour period. The search of the trash bag revealed marijuana seeds, stems, and a roach. Assuming, *arguendo,* that the *Aguilar-Spinelli* requirements were not met in this case, the statements regarding the reputations of the vehicle owners could still be considered by the county court in reaching its probable-cause determination.

 As long as there is a substantial basis for the magistrate's conclusion that probable cause exists, and the magistrate is performing his neutral and detached function, the judicial determination of probable cause will not be disturbed. *State v. Metzner,* 338 N.W.2d 799 (N.D.1983). Under the "totality of circumstances" approach adopted by the Supreme Court in *Gates,* an issuing magistrate is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462

U.S. 213, ——, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). Under the *Aguilar-Spinelli* requirements, the determination of whether or not probable cause exists to issue a search warrant is to be based on a common-sense interpretation of the entire evidence presented to the magistrate. *Sumpter, supra;* see also *State v. Klosterman,* 317 N.W.2d 796 (N.D.1982). We conclude that, applying either *Gates* or *Aguilar-Spinelli* to the facts in the instant case, there was probable cause to issue the warrant to search the Ronngren residence.[1]

## KNOCK AND ANNOUNCE

The Ronngrens assert that the law-enforcement officers failed to comply with the "knock and announce" rule[2] while executing the search warrant.

As the Ronngrens point out in their brief, the testimony presented relative to the execution of the warrant is in conflict. The only point agreed on between the parties is that the officers entered the residence by forcing open the front door. James testified at the suppression hearing that he heard no one knock at the door or announce that they were police with a warrant. He testified that he heard the doorbell ring twice and as he was opening the inside door, the outside door was kicked in. Several of the officers who executed the warrant testified to the effect that they knocked on the door, announced that they were police officers with a search warrant, and waited before forcing open the door. The officers' testimony, however, differed as to such matters as the number of knocks, the period of time between each knock, the precise wording used by the officers in announcing their presence and purpose, and the length of time before they forced open the door. One of the officers testified at trial that he heard movement in the house. The trial court determined that:

> "[T]he law does not specify any particular time which must be waited by officers outside of a particular residence as they knock and announce, rather only a reasonable time, and that can vary with each particular fact situation. This court finds from the evidence presented that the officers gave proper notice of their authority and purpose and knocked and otherwise gave indication of their interest in having somebody come to the door prior to their having made the forceable entry. It is noted that there was a difference in the testimony regarding how long the officers waited, and what exactly they did while they waited outside the door. James Ronngren, one of the defendants, testified to certain facts, and the officers testified to certain facts, with the testimony of the two not being consistent, and this court does not find that the officers were fabricating."

A trial court's disposition of a motion to suppress will not be reversed, if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's determination. *State v. Discoe,* 334 N.W.2d 466 (N.D. 1983). This standard of review allows us to recognize the trial court's opportunity to ascertain the credibility of the witnesses. *State v. Frank,* 350 N.W.2d 596 (N.D. 1984). Having reviewed the record, we

---

1. Because we have determined that probable cause existed to support the issuance of the search warrant, we need not address the State's assertion that the "good faith exception" to the exclusionary rule recently adopted by the United States Supreme Court in *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), should be applied in the instant case. Furthermore, because we have determined that the warrant was valid under either *Gates* or *Aguilar-Spinelli,* we need not consider the Ronngrens' request that we retain the *Aguilar-*

*Spinelli* requirements as a feature of our State Constitution.

2. Section 29-29-08, N.D.C.C., provides in pertinent part that "[a]n officer directed to serve a search warrant may break open an outer or inner door or window of a house, or any part of the house, or anything therein, to execute the warrant, (a) if, after notice of his authority and purpose, he be refused admittance, ..." A "no knock" provision was not included in the search warrant in the present case. See § 19-03.1-32(3), N.D.C.C.

conclude that the trial court's determination is supported by the evidence.[3]

## SEQUESTRATION OF WITNESSES

The trial court ordered that the witnesses who were to testify at the suppression hearing be sequestered. See Rule 615, N.D.R.Ev. The Ronngrens assert that their convictions should be reversed because the State "deliberately" violated that order.

Judy's mother testified that while seated outside the courtroom during the suppression hearing, she overheard a conversation between the State's Attorney and Jamestown Police Officer Ardel Wolff, the State's first witness. She stated that Wolff "said they didn't say anything about the warrant, just that the warrant was in their hand." On cross-examination, Agent David Sohm, the State's fourth witness, testified that he had a conversation at the courthouse with the State's Attorney and Wolff before Sohm took the stand. The defense counsel asked Sohm: "Was there any discussion regarding his [Wolff's] testimony earlier today?" Sohm replied, "I believe he stated to us when he arrived how he testified, yes, sir." Defense counsel commented, "So much for sequestering," and proceeded to question Sohm about the execution of the search warrant.

When irregularities occur in a trial court, the party affected must bring the problem to the court's attention when the irregularities occur so that the court may take appropriate remedial action. *State v. Abrahamson*, 328 N.W.2d 213 (N.D.1982). An issue or contention not raised or considered in the trial court cannot be raised for the first time on appeal. E.g., *State v. Klose*, 334 N.W.2d 647 (N.D. 1983); *State v. Hartsoch*, 329 N.W.2d 367 (N.D.1983). Although the Ronngrens are represented by a different attorney on appeal, new counsel generally is limited to the same issues that prior counsel would have been able to raise. *State v. Brickzin*, 319 N.W.2d 150 (N.D.1982). Defense counsel's comment, "So much for sequestering," was insufficient to raise the issue for consideration by the trial court and therefore insufficient to preserve the issue on appeal.

The Ronngrens assert in the alternative that defense counsel's failure to preserve the issue for review constitutes a violation of their Sixth Amendment right to effective assistance of counsel. A defendant who claims that he received ineffective assistance of counsel has the burden of establishing that defense counsel's performance was deficient and that the deficient performance prejudiced the defendant. *State v. Patten*, 353 N.W.2d 30 (N.D. 1984). The Ronngrens have failed to meet the burden of establishing that trial counsel's performance was deficient. Trial counsel's decision to not pursue the sequestration matter further related to trial tactics, and "it is not our function to allow second-guesses on trial strategy." *State v. Motsko*, 261 N.W.2d 860, 864 (N.D.1978). We have reviewed the record and conclude that trial counsel provided quality assistance to the Ronngrens.

The judgments are affirmed.

ERICKSTAD, C.J., GIERKE, J., and VERNON R. PEDERSON, Surrogate Judge, concur.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.

PEDERSON, Surrogate Judge, participated.

---

**3.** Because of our disposition of this issue, we need not address the Ronngrens' assertion that the "knock and announce" rule is constitutionally mandated, or, if it is not constitutionally mandated, whether or not a violation of § 29–29–08, N.D.C.C., requires suppression of the evidence seized as the result of the search.