**STATE of Minnesota, Appellant,**

v.

**John Alan KRECH, Respondent.**

**No. C3–86–1527.**

Court of Appeals of Minnesota.

Jan. 20, 1987.

Review Granted March 18, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert W. Kelly, Washington Co. Atty., Louise Trant Dobbe, Asst. Co. Atty., Stillwater, for appellant.

Paul W. Rogosheske, Thuet, Lynch, Pugh & Rogosheske, S. St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and PARKER and LESLIE, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

This appeal is from an omnibus hearing order suppressing evidence seized without a warrant from respondent John Krech's garbage and evidence later seized from his person and home following execution of a search warrant. We reverse.

## FACTS

Respondent John Krech was arrested by St. Paul Park police on February 13, 1986, and charged with possession of cocaine and possession with intent to distribute. Krech lived in the lower unit of a two-story duplex in St. Paul Park. Upstairs lived a friend of a part-time St. Paul Park police officer, Robert Cross. Cross visited this upstairs apartment on several occasions.

On the evening of January 16, 1986, Cross was in the upstairs apartment when he observed a strange pattern of traffic to and from the downstairs residence. A number of cars drove up the alley and parked, and their occupants entered the back entrance, stayed three or four minutes, and drove off. This lasted for about five hours.

Cross also worked off-duty in several bars, where he acquired information that Krech was dealing drugs. The St. Paul Park police began an investigation.

On February 12, 1986, under police orders, Cross retrieved an empty UPS box from Krech's garbage can. He did so by walking out the back door of the duplex. The garbage cans were located about five feet from the alley. Cross had to climb over a pile of snow to reach them. The UPS label on the box listed its contents, which the police learned from the sender was a powdered food supplement. The police suspected the supplement was used to cut, or thin, cocaine, and they determined to search all of Krech's garbage.

The same day, Officer Cross returned to the residence via the alley and took the remaining garbage, which had been tied in opaque plastic trash bags and placed in the garbage cans. He took the bags to the police station, where the contents were examined and tested and found to contain small amounts of cocaine.

A search warrant application was prepared based on (1) information received by Cross from concerned citizens; (2) Cross' observation of the traffic to the residence; (3) the UPS box; and (4) the garbage contents which tested positive for cocaine. A warrant was signed and a search the following day resulted in the seizure of cocaine and paraphernalia from Krech and from his home. Krech was arrested, read the *Miranda* warning, and transported to jail. On the way, and later at the jail, he volunteered the locations of other contraband, which was seized.

The trial court suppressed all physical evidence, finding all searches illegal and the later-acquired evidence a fruit of this illegality.

## ISSUES

1. Did respondent have a reasonable expectation of privacy in the seized garbage?

2. Was the search warrant supported by probable cause?

## DISCUSSION

### I

The trial court concluded that Krech had a reasonable expectation of privacy in the contents of his trash cans and determined the garbage contents were illegally obtained. The court did not distinguish the

initial seizure of the UPS box from the later removal of the rest of the garbage.

Reasonable expectation of privacy is a concern often tempered by property law concepts. Limits on government intrusion are offended when the police enter on the property without a warrant. Once items are removed from the property, a person may lose his expectation of privacy. *United States v. Biondich*, 652 F.2d 743, 745 (8th Cir.1981), *cert. denied*, 454 U.S. 975, 102 S.Ct. 527, 70 L.Ed.2d 395 (1981). However, items no longer within the curtilage, but in a private area such as the trunk of an automobile, may warrant an expectation of privacy. *See, e.g., State v. Whisonant*, 331 N.W.2d 766, 768 (Minn.1983) (search of trunk under automobile exception to the search warrant requirement requires probable cause).

The supreme court in *State v. Oquist*, 327 N.W.2d 587, 591 (Minn.1982), has noted that "a householder may ordinarily have some expectation of privacy in the items he places in his garbage can." Such an expectation of privacy, however, must be one that society would view as justifiable or reasonable. *California v. Ciraolo*, — U.S. —, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986); *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967).

Given this formulation of Fourth Amendment interests,

the constitutionality of the reconnaissance of garbage may no longer be tested merely by the application of traditional property law concepts of abandonment and trespass.

*State v. Oquist*, 327 N.W.2d at 589–90.

■ The trial court relied primarily on the trespass necessary to reach the garbage cans in distinguishing this case from *Oquist*, where police retrieved garbage without trespassing. The court in *Oquist*, however, held that the expectation of privacy is not to be determined merely by property law concepts such as trespass. 327 N.W.2d at 589–90. Even if we consider trespass in a constitutional sense, we do not believe Krech exhibited a significantly

greater expectation of privacy by placing his trash five feet from the alley than he would have by placing it where it could be reached without trespass. *See id.* at 590 (abandonment considered in its constitutional sense). Only those trespasses which infringe upon privacy interests violate the fourth amendment. *United States v. Kramer*, 711 F.2d 789, 793–94 (7th Cir. 1983), *cert. denied*, 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983).

In a largely factual determination such as this, the trial court should have distinguished between the UPS box and the garbage bags seized later.

The UPS box was found lying in the trash can. Although Officer Cross retrieved it by walking out from the duplex, he was on the premises by invitation of the upstairs resident. There is no indication Cross took this route to gain a view of additional evidence.

The UPS box was lying open in the trash can, not bagged as was the garbage later retrieved. Thus, it was visible at least to the upstairs resident in using the same trash area. Use of the trash area by another resident was a factor to consider in assessing Krech's expectation of privacy. *See United States v. Michaels*, 726 F.2d 1307, 1312 (8th Cir.1984), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984) (no legitimate expectation of privacy in trash placed in communal trash bin in 16–unit complex).

We acknowledge the closeness of this case. The trial court properly considered the officer's trespass as a relevant factor, but because Krech shared his residence with another tenant, he had no reasonable expectation of privacy in the UPS box. The garbage seized later, however, was placed into opaque garbage bags and tied. The court did not err in finding a reasonable expectation of privacy as to it, properly distinguishing this search from that in *Oquist*, where one bag was lying open on the ground. Thoroughness of disposal is the critical factor.

## II

The trial court also suppressed the evidence obtained from the search of Krech's residence carried out under a search warrant. The State claims this evidence was admissible because the police acted in "good faith" reliance on the validity of the warrant. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The trial court, however, found that several statements in the search warrant application were made in "reckless disregard" of the truth. *See Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). The good-faith exception then does not apply. *United States v. Leon*, 468 U.S. at 913, 104 S.Ct. at 3416. Under *Franks*, the warrant must then be examined, omitting the false statements, to see whether it is based on probable cause.

The search warrant application misstated which officer had received the information from concerned citizens about Krech selling cocaine in local bars. The application also stated that St. Paul Park police had "retrieved garbage bags taken from [defendant's] residence." However, we agree the garbage bags were illegally seized from Krech's property and could not be used to furnish probable cause for a search warrant. *See, e.g., James v. United States*, 418 F.2d 1150, 1152 (D.C.Cir.1969). Therefore, we need not consider whether this statement was false or misleading.

■ The statement as to the citizen tips may have been inadvertent and was not seriously misleading. Although affiant Olson did not receive the tips, Cross was a fellow officer on whom affiant Olson could reasonably rely. The law strongly encourages police to apply for search warrants, and their applications must be viewed in a common-sense rather than a technical fashion. *State v. Merrill*, 274 N.W.2d 99, 110 (Minn.1978). Police, however, should use care to allow no suspicion they are misleading the court. The magistrate then has the responsibility to inquire. The magistrate's determination of probable cause to support a search warrant should be given great deference. *State v. Wiley*, 366 N.W.2d 265, 268 (Minn.1985).

■ Eliminating the cocaine found in the second garbage search, three factual bases for the probable cause showing remained: (1) the citizens' tips relayed through Officer Cross; (2) Cross' observation of the strange traffic pattern into Krech's residence; and (3) the UPS box used for powdered food supplement. We believe these facts were sufficient to establish probable cause.

The incessant traffic of brief visits to Krech's residence was very significant. Both the powdered food supplement box and the traffic pattern gained considerable significance because of the officers' experience and training. *See, e.g., United States v. Carlson*, 697 F.2d 231, 238 (8th Cir.1983). Officer Cross had had drug enforcement experience and training.

In *State v. Ronngren*, 361 N.W.2d 224, 227 (N.D.1985), the North Dakota court relied in part on the unusual amount of traffic to the defendants' residence in holding that probable cause had been shown. In *Ronngren* police had obtained a garbage bag containing remnants of marijuana and had information on the reputations of those visiting the defendants' residence. *Id.* at 226–27 (vehicle owners had reputations as drug users). Here the police had informants' tips directly linking Krech to drug dealing.

The affidavit claimed the informants were ordinary citizens whose reliability can be presumed; moreover, the tips were corroborated by Officer Cross' observation of the traffic to the residence. *See State v. Eling*, 355 N.W.2d 286, 291 (Minn.1984) (lack of showing of informant's reliability is not fatal where the tip is corroborated); *see also State v. Siegfried*, 274 N.W.2d 113, 116 (Minn.1978) (warrant may place "minimal reliance" on informant's tip even if informant's reliability not shown where there is an independent source).

Because we conclude that the search of Krech's residence and his accompanying arrest were based on probable cause, the

statements Krech made following the *Miranda* warning and the evidence seized as a result are admissible.

Although the parties have not addressed the issue, we conclude that the absence of all the evidence suppressed under the trial court order would have a critical impact on the outcome of the trial. *See State v. Kim,* 398 N.W.2d 544 (Minn.1987).

### DECISION

The trial court erred in finding that Krech had a reasonable expectation of privacy in the UPS box. There was probable cause to support the search warrant. Therefore, the trial court erred in suppressing evidence from the search and the post-*Miranda* statements.

Reversed.