STATE of Minnesota, Appellant,

v.

Jessie James ANDERSON, Respondent.

No. C7-88-2409.

Court of Appeals of Minnesota.

May 9, 1989.

Review Denied June 21, 1989.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., J. Michael Richardson, Asst. County Atty., Minneapolis, for appellant.

Alan D. Margoles, St. Paul, Robert M. Speeter, Minneapolis, for respondent.

Heard, considered and decided by SHORT, P.J., and RANDALL and KALITOWSKI, JJ.

## OPINION

KALITOWSKI, Judge.

Respondent Jessie James Anderson was arrested and charged with possession of a controlled substance (crack/cocaine) with intent to distribute a controlled substance. After an omnibus hearing, the trial court granted respondent's motion to suppress evidence seized pursuant to a search warrant and ordered the charges against him dismissed, on the basis that there had been no probable cause for the issuance of the search warrant. We reverse and remand for trial.

## FACTS

On November 1, 1988, Minneapolis police sergeant James Violette, a twelve-year member of the force, assigned to the Crack Enforcement Unit appeared before a judge to request a search warrant for 2404 Plymouth Avenue North, Minneapolis. The address belonged to a corner market known as the Market Dell. Violette's request was based on the following information in the affidavit accompanying the warrant request:

> Your affiant is a Minneapolis Police Sgt. assigned to the 4th Pct Uniform Crack Enforcement Program. Your affiant has been a police officer for approximately 12 years and in that capacity has made numerous arrests involving narcotics and the seizure of narcotics. Acting in that capacity I give the following information.
>
> Your affiant has received complaints from residence [sic] and from Minneapolis Narcotic Unit Officers that drugs are being sold from the business of the Market Deli, located at, 2404 Plymouth Avenue North. Your affiant while on routine patrol in that area has observed heavy traffic to an [sic] from this business usually parties will enter and leave in a very short time and not carrying visible merchandise which is more consistant with the sale of crack/cocaine then that of a food preparation business.
>
> In the past 72 hours your affiant has had contact with a Confidential Reliable Informant who stated that during that 72 hour period they had been at the store located at the address of 2404 Plymouth Avenue North. This CRI states that while inside the Market Deli they ob-

served a black male enter the business approach another black male who stepped behind the counter, removed crack/cocaine and exchanged it for currency with the black male.

On 3/18/88 your affiant sent [sic] up surveillance at the address of 2404 Plymouth Avenue North, at which time I observed two black males standing one on each side of the entry to the above address and appeared to be looking up and down Plymouth Avenue, which is consistant with lookout behavior at a crack house. I also observed several young parties enter, stay for a short time and then leave carrying no visible merchandise from the store.

On approximately 3/14/88, Squad 430, Officers Mosey and Smulski, observed a young black male standing at the front of the above business and as the marked squad car approached this party fled, which is also consistant with behavior or parties involved in the purchase or sale of crack/cocaine. This suspect was later apprehended by Mosey and Smulski, at which time 3 pieces of suspected crack/cocaine were recovered from his person.

Based on the above information from this CRI and your affiants observations your affiant believes there are reasonable grounds to believe that illegal drug sales are taking place at 2404 Plymouth Avenue North, in the business of Market Deli. Your affiant requests permission from the court to enter the business of Market Deli, 2404 Plymouth Avenue North, to search the interior and to seize items listed on the search warrant and other contraband which may be found inside the business.

The warrant was signed and executed. Among the items discovered and seized from Anderson, who was the manager of the Market Dell, were a loaded two-shot Derringer pistol, approximately $5,303.00 in cash, and twenty individually packaged bundles containing crack/cocaine. Another eight bundles of crack/cocaine were found approximately a foot from Anderson on the counter near a cash register. Also recovered was an additional three grams of crack/cocaine which had been thrown under a counter by a co-defendant. Anderson was arrested and charged with unlawful possession with intent to distribute a schedule II narcotic controlled substance in violation of Minn.Stat. § 152.01, subd. 4, 10 (1986); § 152.02, subd. 3(1)(d) (1986); § 152.09, subd. 1(1) (1986); § 152.15, subd. 1(1)(i) (1986); and § 609.05 (1986).

At an omnibus hearing Anderson moved to suppress the evidence obtained during the search on the ground that the warrant was not supported by probable cause. The trial court granted his motion, ordering the evidence suppressed and the charges against Anderson dismissed. The state appeals.

### ISSUE

Do the facts alleged in the affidavit establish probable cause for the issuance of the search warrant?

### ANALYSIS

The Constitutions of both the United States and Minnesota protect citizens from unreasonable searches and seizures. *See* U.S. Const. amend. IV; Minn. Const. art. I, § 10. Except under extenuating circumstances, a search is valid only if it is conducted pursuant to a valid search warrant. Minn.Stat. § 626.08 (1986) provides that, "[a] search warrant cannot be issued but upon probable cause, supported by affidavit."

Probable cause is determined under a "totality of the circumstances" test:

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

Great deference is given to the issuing judge's determination of probable cause. *Wiley*, 366 N.W.2d at 268. The United States Supreme Court stated in *Gates:*

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." "A grudging or negative attitude by reviewing courts toward warrants," is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a common-sense, manner."

*Gates*, 462 U.S. at 236, 103 S.Ct. at 2331 (citations omitted). A reviewing court merely is to decide "whether the evidence viewed as a whole provided a 'substantial basis' for the [m]agistrate's finding of probable cause." *Massachusetts v. Upton*, 466 U.S. 727, 732–33, 104 S.Ct. 2085, 2087–88, 80 L.Ed.2d 721 (1984). The court must make an assessment of the probability that contraband might be located based on the totality of the evidence. *See Gates*, 462 U.S. at 232–33, 103 S.Ct. at 2329.

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Id.* at 231–32, 103 S.Ct. at 2328–29 (citations omitted). The United States Supreme Court also recognized that affidavits "are normally drafted by nonlawyers in the midst and haste of criminal investigation. Technical requirements of elaborate specificity * * * have no proper place in this area." *Id.* at 235, 103 S.Ct. at 2230 (citing *United States v. Ventresca*, 380 U.S. 102,

108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965)).

This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based. *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Recital of some of the underlying circumstances in the affidavit is essential if the court is to perform its detached function and not serve merely as a rubber stamp for the police. However, as the Supreme Court stated:

> [w]here these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, *the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical rather than a common-sense, manner.*

*Ventresca*, 380 U.S. at 109, 85 S.Ct. at 746 (emphasis added). Moreover, the Supreme Court makes it clear, "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* (citing *Jones v. United States*, 362 U.S. 257, 270, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960)).

The application of the principles stated above leads us to reverse the trial court. The affidavit in this case, if read in a common sense way rather than technically, shows ample facts to establish probable cause. The affidavit is detailed, specific and sets forth sufficient factual circumstances supported by the officer's belief.

The affidavit included mistakenly false information concerning the apprehension of a young black male. In addition, the court recognized the affidavit lacked specific language establishing an informant's reliability as required in *Wiley*. However, we believe to quash the warrant on those grounds alone is overly restrictive because even without reference to the informant

and the mistakenly false information, there is a sufficient showing of probable cause.

First, we have a twelve-year veteran of the police force whose most recent assignment is with the crack/cocaine enforcement unit responding to presumably reliable complaints from residents and other police officers.

Second, the officer's experience, coupled with his observation of the activities during a surveillance that occurred prior to the issuance of the search warrant, support a finding of probable cause. "Observation of apparently innocent acts 'can be significant to a trained officer' and that the officer is 'entitled to assess probable cause in light of his experience.'" *United States v. Carlson,* 697 F.2d 231, 238 (8th Cir.1983) (citing *United States v. Wentz,* 686 F.2d 653, 656 (8th Cir.1982)).

The affidavit presents evidence from the surveillance comparable to that in *State v. Krech,* 399 N.W.2d 203 (Minn.Ct.App.1987) *aff'd as mod. on other grounds,* 403 N.W. 2d 634 (Minn.1987). In *Krech* police officers received information from anonymous citizens that Krech was selling drugs. In addition a police officer observed an unusual traffic pattern into Krech's residence. This court held:

> The incessant traffic of brief visits to Krech's residence was very significant. Both the powdered food supplement box and the traffic pattern gained considerable significance because of the officers' experience and training. *See, e.g., United States v. Carlson,* 697 F.2d 231, 238 (8th Cir.1983). Officer Cross had had drug enforcement experience and training.
>
> In *State v. Ronngren,* 361 N.W.2d 224, 227 (N.D.1985), the North Dakota court relied in part on the unusual amount of traffic to the defendants' residence in holding that probable cause had been shown. In *Ronngren* police had obtained a garbage bag containing remnants of marijuana and had information on the reputations of those visiting the defendants' residence. *Id.* at 226–27 (vehicle owners had reputations as drug users). Here the police had informants'

tips directly linking Krech to drug dealing.

> The affidavit claimed the informants were ordinary citizens whose reliability can be presumed; moreover, the tips were corroborated by Officer Cross' observation of the traffic to the residence. *See State v. Eling,* 355 N.W.2d 286, 291 (Minn.1984) (lack of showing of informant's reliability is not fatal where the tip is corroborated); *see also State v. Siegfried,* 274 N.W.2d 113, 116 (Minn. 1978) (warrant may place "minimal reliance" on informant's tip even if informant's reliability not shown where there is an independent source).

*Id.* at 206.

Respondent argues that because *Krech* involved a private residence rather than a business open to the public it is not applicable here. We disagree. Under the "totality of the circumstances," the issuing judge certainly could have concluded from the affidavit that there was probable cause to believe drug dealing was occurring.

This court is alert to invalidate unconstitutional searches and seizures whether with or without a warrant. *See State v. Gabbert,* 411 N.W.2d 209 (Minn.Ct.App. 1987). However, we are equally concerned to uphold the actions of law enforcement officers who follow the proper constitutional course. In our view the officers in this case did what the constitution requires. They obtained a warrant from a judicial officer upon probable cause, supported by affidavit and describing the place to be searched and the things to be seized. *See* Minn.Stat. § 626.08 (1988). It is important that having done so their actions should be sustained under a "system of justice responsive both to the needs of individual liberty and to the rights of the community." *Ventresca,* 380 U.S. at 112, 85 S.Ct. at 747.

## DECISION

The trial court erred in ruling that the search warrant was improperly issued without probable cause and dismissing the

charges against defendant. Therefore, we reverse the dismissal and remand for trial.

Reversed and remanded.

RANDALL, Judge, dissenting.

I respectfully dissent. I would have affirmed the trial court's suppression of the evidence obtained in the search.

A trial court's review of a search warrant at the *Rasmussen* portion of an Omnibus hearing is the first time the search warrant is scrutinized by a neutral judge at a full adversarial hearing complete with a transcribed record, oral and/or documentary evidence. At the hearing, for the first time, witnesses for the state are subject to cross-examination, and the defense is free to put on its own case and call witnesses if it chooses.

Here, the trial court reviewed the supporting affidavits originally presented to the issuing judge, but, in addition to what the issuing judge saw, the trial judge heard extensive oral testimony under oath. The trial court in a well reasoned and lengthy memorandum took the substantive paragraphs of the affidavits and then compared them line-by-line to the actual evidence offered by the prosecution in the *Rasmussen* hearing. At the *Rasmussen* hearing, both sides offered oral testimony, and thus great deference is owed the trial court in reaching factual conclusions based on disputed testimony.

I cannot find that the trial court was clearly erroneous in its application of the law measured against the factual conclusions it drew. I would have affirmed the trial court.